## YAZOO CITY *v.* ANN BIRCHETT.

### [42 South. Rep., 569.]

1. MUNICIPALITIES. *Ownership of electric plant. Injury from electricity. Liability.*

   If a municipality embark in the management of any utility for profit its liability is determined by the rules applicable to private corporations or individuals conducting such enterprises.

2. SAME. *Proximate cause.*

   Where a telephone lineman, while climbing a pole of his company, was injured by coming in contact with a guy wire of an electric plant, charged with electricity escaping by reason of defective insulation, the proximate cause of the injury was the current negligently imparted to the guy wire, although he would not have been injured if he had not stood upon a step of his company touching a small abandoned wire which connected with the guy wire, thus forming a short circuit.

3. JURY TRIALS. *Abuse of Argument. Failure to object.*

   Reversible error cannot be predicated of the fact that an attorney for the plaintiff, during his argument to the jury:

   (*a*) Read a newspaper statement of the financial condition of an industrial plant owned by defendant, if, upon objection, the court directed the jury to disregard it and the offending attorney acknowledged his error and asked that it be disregarded; nor that he

   (*b*) Stated to the jury that, according to the standard tables of mortality, the life expectancy of the person for whose death the suit was brought was a designated number of years, there being no evidence of which to predicate the statement, if, upon objection, the offending attorney acknowledged his error and requested the jury to disregard the statement; nor that he

   (*c*) Read to the jury the instructions asked by defendant and refused by the court, if no objection thereto was made by defendant before verdict.

FROM the circuit court of Yazoo county.

HON. DAVID M. MILLER, Judge.

Mrs. Birchett, the appellee, was plaintiff in the court below; the city of Yazoo City, appellant, was defendant there. From

a judgment in plaintiff's favor defendant appealed to the supreme court.

Mrs. Birchett, the widow and sole heir of J. B. Birchett, deceased, sued Yazoo City to recover damages because of his death. The declaration alleged that the municipality was engaged in the business of operating an electric light plant for municipal purposes, and also to furnish incandescent lights to the public for remuneration, and was liable for the careful operation and maintenance of its plant; that her husband, an employe of a telephone company, while ascending a pole of his employer, in the discharge of his duties, came in contact with a guy wire sustaining an electric light pole of defendant's electric light system, and because of the inefficient insulation of the city's electric wires, was severely shocked and killed. The city's defense was contributory negligence on the part of the deceased.

It appeared that the telephone of one Birdsall being out of order, the deceased was sent by the telephone company, on a wet and windy day, to ascertain the cause of the trouble and to remedy the same. At the corner of Washington street and North alley, near the home of Birdsall, the telephone company's pole was located near to other poles upon which the city had strung its electric wires, and these city poles were held in position by guy wires extending from points near their tops to the ground, and one of the wires passed near the pole of the telephone company. The telephone wire to the Birdsall home extended from the telephone pole mentioned, and in the discharge of his duties plaintiff's husband climbed the same, and was injured by coming in contact with the city's guy wire, which had become charged with electricity escaping from the city's defectively insulated electric light wires. The deceased was at the time of his death standing on an iron stirrup or step of the telephone pole, to which was attached a small wire of the kind commonly used for baling hay, and called in the record

a "hay wire." This wire was attached to the guy wire, and when the deceased, who just before the injury was standing with one foot upon the hay wire, grasped the guy wire with his hand, a circuit was completed, and his death resulted. The opinion further recites the facts.

During the final argument counsel for the plaintiff read to the jury, from a newspaper clipping, what purported to be a statement of the financial condition of the electric light plant. The clipping had not been introduced in evidence, and counsel for defendant immediately objected and protested. The court stated to the jury that the reading of the paper was improper, and no consideration should be given it. Counsel for plaintiff also asked the jury not to consider the statement as having been read to them. In the same argument to the jury counsel for plaintiff stated to the jury that, according to the standard tables of mortality, the life expectancy of plaintiff's intestate was thirty-nine years. There was no evidence of the fact, and tables of mortality had not been introduced. Counsel for defendant objected to the same, whereupon counsel for plaintiff requested the jury to consider the statement as having never been made. In the same argument counsel for plaintiff read to the jury certain instructions which had been asked by the counsel for defendant and which had been refused by the court. No objection was made by counsel for defendant to such action, but afterward the reading of these refused instructions was assigned as a ground for new trial, as was the above statements and doings of counsel for plaintiff on his final argument, exceptions having been duly taken to all of them, and to the failure of the court to award defendant greater relief from their injurious effects. The jury returned a verdict of $10,000 in favor of plaintiff.

*Williams & George,* for appellant.

In this suit there was no legal presumption of negligence upon the part of the city, and it was incumbent upon the

plaintiff to prove negligence by a preponderance of the evidence. In order to charge the city with negligence it was incumbent upon the plaintiff to prove that the city had a reasonable time within which to remedy the trouble after it had notice of the same. 10 Am. & Eng. Ency. Law (2d ed.), 872; 10 Am. Dig. (Century ed.), sec. 607; *Huber* v. *LaCrosse City Ry Co.,* 66 N. W. Rep., 708. We submit that the facts in evidence did not show that sufficient time had elapsed after notice of the defective condition of the wires, and before the death of Birchett, for the city to have repaired the defective wires. The uninsulated part of the wire was twenty feet above the ground, at a point where there was no pavement and hardly any passing. It was at a place where there was no reasonable probability of a human being coming in contact therewith, or of any injury to any one, even though the guy wires necessary to support the electric light pole might become charged with electricity. The city could not foresee that somebody would put a telephone pole at the corner where Birchett was killed, and that subsequently some person would climb that pole and unnecessarily reach out and grasp the uninsulated wire, even if the city could be charged with foreseeing that the electric light wire might sag and touch the guy wire and burn off the insulation. Still less could the city foresee and guard against the accident occasioned by somebody attaching a small hay wire to the pole of the telephone company and then to a guy wire under the control of contractors putting up a new line, and further foresee that some one in climbing up the telephone pole would unnecessarily catch hold of the guy wire at the same time that his foot was brought into contact with the hay wire, thereby sustaining an electric shock sufficient to cause death. The exercise of reasonable care to keep its system in order was all that was obligatory upon the appellant. *Brush Elec. Co.* v. *Lehman,* 77 Am. St. Rep., 898; *Hector* v. *Boston Electric Co.,* 75 Am. St. Rep., 300; 15 Cyc., 473, note 35.

Even if appellant was negligent, the deceased was also guilty of contributory negligence. His actions, with knowledge of the conditions, contributed to his death. "One cannot compel another to indemnify him for loss or injury which by his own rashness or folly he has brought upon himself." *Bardwell* v. *Railroad Company*, 63 Miss., 577; *Dooley* v. *Railroad Company*, 69 Miss., 651 (s.c., 12 South. Rep., 956); *McMurtry* v. *Railroad Company*, 67 Miss., 606 (s.c., 7 South. Rep., 401); *Dowell* v. *Railroad Company*, 61 Miss., 519; *Sneed* v. *Morehead*, 70 Miss., 69 (s.c., 13 South. Rep., 235). The deceased was a lineman, a "trouble finder" of a telephone company, well versed in matters pertaining to electricity, yet he went up the telephone pole on that fatal day without due investigation beforehand, without insulated gloves, using no insulated pliers, taking no precautions of any kind. The facts show that he was guilty of such contributory negligence as should have precluded recovery by the appellee. Had he noticed, he could have seen that the small hay wire was grounded with the new guy wire. His actions constituted more than mere negligence, being gross recklessness, born of long familiarity with danger. It shows another illustration of the fact that it is not the inexperienced, but the experienced, who, having grown familiar with and contemptuous of danger, is really in danger from industrial appliances. The deceased was aware of the condition of the wires, and the appellee should not have recovered. *Wood* v. *Diamond Electric Company*, 39 Alt. Rep., 1111; *Anderson* v. *Electric Company*, 46 Alt. Rep., 513; 15 Cyc., 476; 5 Thompson on Negligence, sec. 5734; *Railroad Company* v. *Crockett*, 78 Miss., 412 (s.c., 29 South. Rep., 162); *Freeman* v. *Railroad Company*, 74 Mich., 86; *Morehead* v. *Railroad Company*, 84 Miss., 123 (s.c., 36 South. Rep., 151); *Murdock* v. *Railroad Company*, 77 Miss., 487 (s.c., 29 South. Rep., 25).

In order for the negligence of the city to have been the

proximate cause of Birchett's death, his death must have been shown to be the natural and probable consequence of that negligence; that is, the negligence charged in the declaration. The facts show that the negligence of the appellant was not the proximate cause of the death, and the court below should have so instructed the jury. *Deisenreiter* v. *Kraus Malting Co.,* 72 N. W. Rep., 735; 1 Sutherland on Damages; *Meyer* v. *King,* 72 Miss., 1 (s.c., 16 South. Rep., 243); *Crawley* v. *Railroad Company,* 70 Miss., 344 (s.c., 13 South. Rep., 74).

It was reversible error for the counsel for plaintiff, in the argument before the jury, to read the instructions to the jury which had been asked by the defendant and refused by the court. The excuse offered by counsel for plaintiff was that one of the counsel for the defendant had argued to the jury that the hay wire was the proximate cause of the death, and had further argued that the telephone company was liable. This was not an excuse at all. Under instructions granted to the defendant its counsel were within their rights to argue the question of whether the municipality or some other agency was liable. The effect of reading the refused instructions was to leave upon the minds of the jury the impression that the court had meant by their refusal to hold as a matter of law that the hay wire was not the proximate cause of the death, but the refusal of the instructions carried no such meaning. *Martin* v. *State,* 63 Miss., 505.

But it is contended that as the defendant, the appellant here, did not at once object to the reading of the defendant's refused instructions by the plaintiff's counsel, defendant has now lost the right to complain. Such is not the law.

In addition to reading the refused instructions of defendant, counsel for plaintiff read to the jury a newspaper clipping containing a detailed statement of the operation of the municipality's electric light plant. Such clipping had never been offered in evidence. Counsel for defendant at once protested,

but the court sat mute. And not until the statement had sunk into the minds of the jury did the court tell them that the action of counsel was improper and that they must ignore the contents of the clipping; and counsel for plaintiff, having achieved his object, then kindly stated to the jury that he would withdraw the allegations of the clipping which he had read.

There was further error upon the part of counsel for plaintiff in stating to the jury, no evidence to that effect having been offered, that under the mortuary tables in common use Birchett's expectancy of life at the time of his death was thirty-nine years, although when counsel for defendant objected counsel for plaintiff kindly withdrew the statement. Such action warrants a reversal of the judgment from which the appeal is taken.

*Campbell & Campbell*, on the same side.

In order to determine whether the city was negligent, the court must keep in mind the positions of the different wires which contributed to and caused the death of deceased. North alley runs east and west, and Washington street runs north and south. Near their intersection were several electric light poles and a telephone pole. One of the electric light poles was for the purpose of an arc light. This pole was supported by several guy wires, which ran eastward down the alley to a wooden stob eight feet above the ground. There also ran east down this alley an electric light wire which carried a current for lighting houses, commonly known as the incandescent current. This wire was near the guy wire running down the alley, and the guy wire was fastened to the top of the pole on Washington street, which also supported an arc light. The telephone pole was near this electric light pole. Another guy wire attached to the top of the electric light pole ran southward down Washington street past the telephone pole.

The morning when deceased met his death was damp and windy. It is shown by undisputed testimony that in wet weather no insulation is sufficient to prevent leakage of elec-

tricity from a live wire, and that in windy and wet weather the incandescent wire, when blown in contact with the guy wire leading eastward down Washington street, would charge the guy wire with electricity, and this guy wire would in turn communicate the electricity to the guy wire attached to the pole supporting the arc light and leading south down Washington street. When the deceased went to find the reason why Birdsall's telephone would not work, he climbed the telephone pole. It appars that some one, not disclosed by the record, had taken a common wire, used in baling hay, and attached it to the guy wire running down Washington street, and had also attached it to the iron spike in the telephone pole known as a stirrup, the hay wire being wrapped around the telephone pole and fastened to the iron spike or stirrup. Birchett placed his foot on this spike to which the hay wire was attached, and, reaching out his left hand, caught hold of the guy wire supporting the pole upon which the arch light hung. This completed a current and caused his death.

Was the city negligent, and was such negligence the proximate cause of the young man's death? We think not. The negligence complained of in the declaration is that the plaintiff had permitted the insulation of its electric light wire to become worn, and as a result Birchett's death occurred. So far as the city could foresee, it owed no duty to anyone to keep its electric light wire insulated, except to the traveling public. It had taken every precaution it could in the location of its poles and the arrangement of its wires. None of the pleadings allége any negligence on the part of the city on the ground that the electric light wire was put in too close proximity to the guy wire, but the charges of negligence are that the city permitted the insulation to become worn so that the electricity was allowed to escape. The point was raised and maintained all through the trial that the evidence showed a variance from the pleadings. As to the degree of duty upon the city to keep its wires insulated see *Hector* v. *Electric, etc., Co.,* 174 Mass., 304.

The facts in evidence show that the city did not have suffi-
cient time after notice to remedy the defective condition of the
wires.    It was certainly entitled to a reasonable time.    10 Am.
& Eng. Ency. Law, 872.

Unless the city could be charged with knowledge of the prob-
ability of the events leading to the death, and charged with
knowledge before the time of injury, the judgment appealed
from should be reversed.    The negligence of the city must be
proven to have been the proximate cause.    *Railroad Company*
v. *Woolley,* 77 Miss., 927 (s.c., 28 South. Rep., 26) ; *Meyer*
v. *King,* 72 Miss., 1 (s.c., 16 South. Rep., 245) ; *Elliott* v.
*Allegheny Light Co.,* 13 Am. Neg. Rep., 600 ; Thompson on
Negligence, section 58 ; *Milwaukee, etc., Co.* v. *Kellogg,* 94
U. S., 469.

Plaintiffs contended in the court below that the municipality
was engaged in a highly dangerous employment, using an un-
known, subtle and dangerous agency, and should therefore be
held to the utmost care and the greatest diligence.    We do not
think this a correct statement of the law.

At common law neither an individual or a corporation was
liable for injury resulting in immediate death.    Hence there
was and is no liability in actions for death save that which
rests on statutory enactment.    If the appellee, as wife of the
deceased, had any right to sue it was solely under Laws 1898,
ch. 65. In *Dollman* v. *Moore,* 70 Miss., 276 (s.c., 12 South.
Rep., 23), it was held that the word "person" does not include
a municipal corporation.    Now, as chapter 65, above cited,
especially limits the application of the act to the relation of
"master and servant," and as the appellee's husband was not a
servant or employe of the municipality, there should be no
recovery.

The young man met his death in November, 1904.    The
amended declaration was filed in April, 1906, more than a
year after Birchett's death, and this amended declaration for

the first time·charged knowledge on the part of the defendant as to the alleged want of insulation of its wire on North alley. This allegation was necessary to constitute a cause of action against the defendant. This being necessary to constitute negligence, it results that the suit cannot be maintained, as it was not brought within a year after the death of the deceased.

It was error in counsel for the plaintiff, Birchett, to read to the jury the instructions which had been asked by the counsel for the city and refused by the court. It was also error to state what the expectancy of the life of the deceased was as estimated from the mortality tables in standard use, the tables not having been put in evidence. And it was error for counsel to read the newspaper clipping as to the earnings of the city electric plant, which showed large gains for the city; nor was such action excused by counsel's subsequent withdrawal of the same from the jury.

*Green & Green,* on the same side.

The accident was proximately caused by· Birchett's own negligence. He was an experienced lineman; was at the telephone company's office when the trouble at Birdsall's telephone was indicated by the telephone switchboard. The electrical disturbance there showed him that there was a greater current than the telephone company used. It should have been apparent that there was a communication somewhere between the telephone wires and the more heavily charged electric light wires. Knowing this, he started forth to discover the trouble, on a wet and windy November day, taking no rubber gloves and making no arrangement for his protection from the charged wires. Due to his lack of precaution he met his death. Had he used his eyes as he should have done, he would have seen that something was wrong before he climbed the telephone pole.

Where the evidence and all just inferences to be drawn therefrom show that the plaintiff's negligence contributed to produce the injury, it is the duty of the court to instruct the

jury that the plaintiff cannot recover. *Bridges* v. *Jackson Electric Ry. Co.,* 86 Miss., 584 (s.c., 38 South. Rep., 788); *Railroad Company* v. *McLeod,* 78 Miss., 342 (s.c., 29 South. Rep., 76); *Nichols* v. *Railroad Company,* 83 Miss., 139 (s.c., 36 South. Rep., 192); *Truly* v. *Lumber Co.,* 36 South. Rep., 4; *Chisholm* v. *New Eng. Tel. Co.,* 176 Mass., 125.

In *Wagner* v. *Portland,* 40 Ore., 390, the court stated that "a workman who has worked for two months and a half in taking down electric wires, without using rubber gloves or boards to stand on, knowing the hazards incident to such work, will be held to have assumed the risk of this work without such appliances." And to the same effect is *Newark Light Co.* v. *Garden,* 78 Fed. Rep., 79. We refer also to *Piedmont Electric Co.* v. *Patterson,* 84 Va., 747, a case in many respects like the case at bar, where it was held that the plaintiff could not recover. Also, see Wood on Master and Servant, section 326; Thompson on Negligence, section 809; *Bergin* v. *Telephone Company,* 70 Conn., 54; *Leeds* v. *Telephone Co.,* 178 N. Y., 118; *Nolan* v. *Street Ry. Co.,* 173 N. Y., 604, and *Columbus* v. *Dorsey,* 119 Ga., 363.

The city had no actual notice of the danger in time to have remedied the same.

It was error for the court below to permit counsel for plaintiff in his closing address to the jury to state that the tables of mortality in standard use showed that the expectancy of the life of Birchett was thirty-nine years; even if the mortality tables had been offered at the proper time before the case had been closed, they would have been inadmissible in evidence, for there was nothing to show that the deceased belonged to the class of persons upon whose life expectancies the mortality tables were based. *Railroad Company* v. *White,* 82 Miss., 471 (s.c., 33 South. Rep., 470); *Railroad Company* v. *Crudup,* 63 Miss., 303. Moreover, the mortality tables were not in evidence, and counsel was using a basis on which to estimate

the duration of the life of the deceased in order to secure a verdict for a large amount. Especially was this erroneous because when counsel for the defendant objected the court below did not rule on the question, but allowed the statement of counsel to go to the jury unchallenged as proper for its consideration.

*Henry, Barbour & Henry,* for appellee.

Except in rare cases the question of contributory negligence of the plaintiff is for the jury. *Stevens* v. *Railroad Company,* 81 Miss., 195; *Bell* v. *Railroad Compnay,* 87 Miss., 234. Birchett was a lineman in the employ of the Cumberland Telephone & Telegraph Company, his business being to handle telephone wires, which carried no current capable of producing death. Hence there was no duty upon him to be on the lookout for dangerously charged wires. Unless Birchett saw the point of contact of the guy wire contributory negligence cannot be charged against him. He was warranted in assuming that there was no danger in his climbing the telephone pole in the discharge of his duties. The facts show that while Birchett had his attention fixed on the wires above him, that on North alley, a distance of fifty or more feet away, the city's incandescent electric light heavily charged wire was in contact with a guy wire of the city running eastward to a stake on North alley; that this wire was attached to the top of a pole on Washington street, near the one up which Birchett was climbing, and from the top of this pole, and connected with the aforesaid guy wire, was another guy wire running down Washington street southward to a stake, and this last named wire was the one with which Birchett came in contact. A lineman, in a case like this, can be put on notice only of patent defects, not latent defects like the above. We refer to the following cases which will be found to have been decided on facts in many respects similar to the one at bar. *Illingsworth* v. *Boston Electric Co.,* 161 Mass., 583; *Clements* v. *Louisiana Electric Co.,* 16 L. R. A., 43; *Bourget* v. *City of Cambridge,* 16 L. R. A.,

200; *Mitchell* v. *Electric Company,* 55 L. R. A., 398; *Ennis* v. *Gray,* 87 Hun., 355; *Schweitzer* v. *Citizens' Electric Company,* 52 S. W. Rep., 830; *Griffin* v. *United Electric Company,* 49 Am. St. Rep., 477; *Overall* v. *Louisville Electric Company,* 37 S. W. Rep., 442; *Newark Electric Co.* v. *Garden,* 37 L. R. A., 725.

It is claimed by the appellant that the negligence of the city was not the proximate cause of the death, but that the "short circuit" formed by Birchett's body on touching the heavily charged wire, was the proximate cause. Our answer is simply that there can never be an electric shock received by any person unless that person's body becomes a "short circuit." But it is certain, in any view of the case, and it must be figured into any hypothesis laid down by appellant, that the small hay wire attached to the telephone pole was absolutely harmless, and that the great and efficient cause of the unfortunate young man's death was the passage of the electric current through his body. As regards question of proximate cause, see *Roberts* v. *Yazoo R. R. Company,* 40 South. Rep., 481, a case appealed from Yazoo county. And also *Milwaukee Railroad Company* v. *Kellogg,* 94 U. S., 475.

It is a well-established principle of law that where concurrent acts of negligence produce an injury, either or both of the parties whose actions produced the negligent acts causing the injury, are liable. In this case other than defendant's negligence there was no independent, self-acting and efficient cause producing the death of Birchett, even if we admit that the hay wire attached to the ground wire contributed to, and concurred with the city's negligence, in producing the death. If the placing of the hay wire by some one was necessary in order to bring about Birchett's death, it does not relieve the city, since its negligence was an active agency in producing the death, and such negligence was one of the proximate causes. The negligence of the unknown person in putting the hay wire where

it was may have been another concurring cause; but the city's negligence is the same. *United States Electric Co.* v. *Shelton,* 14 S. W. Rep., 863; *McKay* v. *Telephone Company,* 19 South. Rep., 695; *Bailey* v. *Delta Elec. Co.,* 86 Miss., 634 (s.c., 38 South. Rep., 354); *Jones* v. *Finch,* 29 South. Rep., 182; 2 Thompson on Negligence, 1088; 15 Am. & Eng. Ency. Law (2d ed.), 440.

The city, under the law, owed a duty not only to Birchett, but to the public at large, to exercise the highest degree of care to keep the insulation perfect, and to retain the deadly current within this insulation. Counsel for appellant cannot with any show of reason contend that the city was not required to guard against such an unusual thing as the attaching of the hay wire where it was placed, and the coming of Birchett into contact with the two wires. The dangerous character of highly charged wires is a matter of common knowledge, placing upon the person or party in charge thereof the highest degree of care. *Illingsworth* v. *Boston Electric Co., supra; Ahern* v. *Oregon Telephone Company,* 22 L. R. A., 635; *White Sewing Machine Co.* v. *Richter,* 2 Ind. App., 334; *Insurance Company* v. *Tweed,* 74 U. S., 398; *Mitchell* v. *Raleigh Electric Co.,* 55 L. R. A., 400.

The city for a long time had constructive notice of the defective condition of the wires, and actual knowledge of the same had been conveyed to the superintendent in charge of the city's electric plant, and an employe of the city had been to the place to examine into the conditions. In addition, it was proved that when the wire was originally placed by the city's employes the condition of the insulators was defective, and one of the superior officers of the plant was at the time of erection of the wires notified of such defective conditions.

Counsel for appellant contend that there was reversible error in the conduct of one of the attorneys for the appellee in referring to certain instructions which had been asked by coun-

sel for appellant, and which the court had refused. Counsel for appellant were, however, present in the court below throughout the trial, and made no objection whatever, and took no exception thereto, and it is now too late to claim that such action was error. Even in a criminal case, where no exception is taken at the time, advantage cannot be taken subsequently on motion for a new trial. *Cheatham* v. *State,* 67 Miss., 33,5 (s.c., 7 South. Rep., 204) ; *Cartwright* v. *State,* 71 Miss., 82 (s.c., 14 South. Rep., 526).

It is further insisted by counsel for appellant that the conduct of the same attorney for the appellee in reading to the jury certain figures with reference to the earnings of Yazoo City, which had not been previously placed in evidence, constitutes reversible error. But the record shows that as soon as the court had its attention called to the fact by counsel for appellant, the court immediately 'called the attention of the attorney, who was still in his argument before the jury, and the attorney at once stopped the argument. The court thereupon directed the jury that they were not to regard the statement just made by the attorney, and told them that the references made by the attorney to the earnings of the city were excluded from their consideration. The attorney for appellee also stated to the jury that his remarks were withdrawn, and joined in the request that they should not consider the same. All that could be asked by appellant was thus done by the court. The exact point has been before this court, and held not to be error. *Perkins* v. *Guy,* 55 Miss., 153. See, also, *L. N. O. & T. R. R. Co.* v. *Thompson,* 64 Miss., 584 (s.c., 1 South. Rep., 840). In this latter case there was an incorrect statement of the law by counsel for the plaintiff, and when the court's attention was called thereto by counsel for defendant, the court declined to do anything, and exception was duly taken. This court held that the circumstances did not constitute reversible error.

The same can be said and applied to the claim that it was

error in counsel for appellee to state to the jury that according to the tables of mortality in standard use the expectancy of life of appellee's husband was thirty-nine years, there being no evidence to support the statement, but it was promptly withdrawn when objection was made by counsel for appellant, hence there was no error.

*J. A. P. Campbell,* on the same side.

Yazoo City is liable, just as a private corporation. *Mackey* v. *Vicksburg,* 64 Miss., 777 (s.c., 2 South. Rep., 178); 2 Dillon on Mun. Corporations, 985; Smith on Mun. Corporations, sec. 807; Beach on Public Corporations, sec. 2612; 3 Abbott on Mun. Corporations, sec. 957; 20 Am. & Eng. Ency. Law, 1107*b*, 1205; Joyce on Electricity, sec. 232; Cooley on Torts, secs. 619, 620.

Our statute embraces corporations public and private. By the use of the words, "person or corporation," all are embraced. 6 Thompson on Negligence, secs. 702, 703.

Negligent ignorance is equivalent to actual knowledge. 4 Thompson on Negligence, sec. 3798.

As to the necessity of insulation of wires, see Joyce on Electricity, sec. 445; 185 Pa. St., 406; 164 Mass., 492. It was not obligatory on the deceased lineman to have used rubber gloves as protection. Joyce on Electricity, sec. 670.

As to contributory negligence, see our own cases, commencing with *Railroad Company* v. *Alexander,* 62 Miss., 496, and *Railroad Company* v. *McGowan,* 62 Miss., 682. A most satisfactory case on the general doctrine of contributory negligence, and in harmony with our own cases, is *Milwaukee, etc., Co.* v. *Kellogg,* 94 U. S., 469, which avoids much of the quibbling often found on the subject.

The plaintiff was granted seven instructions, and had three refused. Those granted seem to be undoubtedly correct. The defendant municipality asked thirty instructions, eighteen of

which were given. Surely this was enough law to guide the jury. Nothing proper was omitted.

No witness asserted that the deceased saw the contact of the wires which did the mischief. Several swore he could see, while several testified that he could not, as they believed, because of obstacles. Whether there was contributory negligence was a question for the jury, which viewed the scence of the tragic occurrence at the instance of the defendant, and answered the question in the negative.

Argued orally by *J. W. George,* and *T. H. Campbell,* for appellant, and by *J. A. P. Campbell, J. F. Barbour,* and *Marcellus Green,* for appellee.

CALHOON, J., delivered the opinion of the court.

On both sides this case has been argued orally and by brief with thoroughness. It is needless to get outside the written arguments for authorities. The instructions on either side present every possible view of the law which could be fairly contended for. There is nothing to be said for either, as to the negligence of the city or the contributory negligence of the deceased, which has not been urged below and here. The jury had the whole case. There was testimony going to show gross negligence on the part of the city, and testimony going to show that the deceased did no more than an ordinarily prudent man might do. When a city embarks in the management of any utility for profit, it is liable, or not liable, by precisely the same rules applicable to private corporations or individuals conducting such enterprises. The fact that the city was the owner probably explains the serious tone of the defense. Many times the importance of a party makes the gravity of the case.

On the verdict we must see, as best we can, what was the observation of the jury on the facts shown. They saw that telephone wires were not hurtful on contact; that Birchett went to correct a trouble with Birdsall's telephone connection; that

he went directly to the telephone pole from which that connec-
tion came, and promptly ascended it, and was killed by a circuit
formed by what should have been a cold and harmless guy wire
with a high-voltage death-armed wire of the city, negligently
put in circuit with it, which he did not see, or, if he did see,
was not apparently dangerous where he was.    There was no
danger from the connection of the incandescent wire east on
North alley with the guy wire there, if it had not been in con-
nection with the guy wire south on Washington street at the
top of the city's pole.    A process of elaborate inductive reason-
ing is not to be attributed to a man in the discharge of ordinary
duty in an ordinarily harmless function.    The attachment of
the hay wire to the step of the telephone pole, of which all seem
·ignorant, may have ·been the fact without which the calamity
would not have occurred; but, all the same, the negligent cur-
rent on the guy wire was the proximate cause of the death,
and the jury did not hold Birchett to a strict scrutiny of every
step he took up the pole.

The reading by counsel of the instructions refused to the
other side, under the circumstances, if error at all, was not
objected to at the time.    The other two matters in this argu-
ment, if reversibly hurtful ordinarily, are not so here, because
withdrawn and the jury admonished.    Jurors are not to be
regarded as senseless objects.

If anything could result from Birchett's seeing the trouble
on North alley, there was very strong testimony that he could
not have seen it.

*Affirmed.*