Tom L. Holder *vs.* Massachusetts Horticultural Society.

Suffolk. November 15, 16, 1911. — March 1, 1912.

Present: Rugg, C. J., Hammond, Braley, Sheldon, & DeCourcy, JJ.

*Negligence,* Employer's liability. *Charity.*

In an action against the owner of a building, in which the plaintiff was employed as a general helper, for injuries caused by the fall of an elevator or dumb waiter on which the plaintiff had stepped by direction of a superintendent of the defendant when the superintendent and the plaintiff were engaged in attempting to adjust the lifting cable of the elevator which had run off the wheel and fallen down, if it can be found that, in obedience to a repeated order of the superintendent, relying upon his assurances that such an act was safe and justifiably believing that there were safety devices to prevent the elevator from falling, the plaintiff jumped on the elevator and it dropped to the bottom of the well, there is evidence for the jury that the plaintiff was in the exercise of due care, that he did not appreciate and assume the risk, and that the order of the superintendent was negligent.

A charitable corporation owning a building, which lets a part of the building to a tenant for purposes entirely disconnected with those for which it was chartered, is not exempted from liability for an injury to a man in its employ caused by the negligence of its superintendent when the superintendent and the employee were engaged in doing work for the benefit of the tenant in accordance with the contract of the corporation with the tenant.

Tort by an employee of the defendant for injuries sustained on February 17, 1908, from the falling of an elevator or dumb waiter in the building of the defendant in the manner described in the opinion. Writ dated June 10, 1908.

The declaration contained three counts, the first alleging negligence in allowing the elevator to be in an unsafe and dangerous

condition, the second alleging negligence of a superintendent, and the third alleging a defect in the ways, works or machinery of the defendant. A fourth count, added by amendment, alleged negligence of a person who in the absence of the superintendent was acting as superintendent.

In the Superior Court the case was tried before *Brown*, J. It was agreed that the defendant was a corporation created by St. 1829, c. 22. The following facts appeared in evidence: The building of the defendant was at the corner of Massachusetts and Huntington Avenues in Boston and was known as Horticultural Hall. One Spry was the engineer of the building and had entire charge of its mechanical parts. The plaintiff "was hired to do janitor work, which consisted of keeping the place clean, sweeping, dusting, scrubbing, cleaning brass work, etc." He was instructed by one Rich, who was the general superintendent of the building and the secretary of the defendant, to take orders from Spry.

A secret society, known as the Order of the Eastern Star, hired for the week beginning February 17, 1908, certain portions of Horticultural Hall consisting of the large exhibit room, the lecture room, the restaurant in the basement and, in connection with that, the kitchen, which was in the third story. On the morning of February 17 the caterer in charge of the kitchen wished to have some tables brought up, and asked Spry to send up some tables. Spry thereupon said to the plaintiff, "Tom, they want a table in the kitchen. Get one up." The plaintiff thereupon got a table eight feet long and three feet wide, and with another man tried to get the table up through some spiral stairs to the third floor. Finding that this was not practicable, they put the table on the elevator or dumb waiter, which was used for the purpose of carrying supplies from the basement to the kitchen. The plaintiff then went to Spry and said, "Joe, we can't get the table up the stairway; I have got it on the elevator," to which Spry replied, "That is all right, Tom. Send it up. Can you do it?" to which the plaintiff replied, "I guess I can." The table was accordingly sent up to the third floor and taken off. A little while after, Spry came to the plaintiff and told him that more tables were wanted, to which the plaintiff replied that he would get them up just as soon as he could. The plaintiff and another man then got more

tables and put one on the elevator in the same manner that they had put the first one on. When they went up to take the table off, it was found that something was wrong with the elevator, and the plaintiff went to see what the trouble was. He saw that the lifting cable of the elevator had parted from the cross beam at the top of the elevator. The cable had run off the wheel and fallen down toward the platform of the motor so that it hung down the well. Spry then came upstairs and the conversation between him and the plaintiff occurred which is quoted in the opinion, followed by the accident as there described.

At the close of the plaintiff's evidence the judge ordered a verdict for the defendant, and reported the case for determination by this court, with a stipulation of the parties, that, if the ruling was right, judgment was to be entered upon the verdict; but that, if the ruling was wrong, judgment was to be entered for the plaintiff in the sum of $2,500.

*D. E. Hall,* for the plaintiff.

*E. K. Arnold,* (*W. B. Luther* with him,) for the defendant.

HAMMOND, J. This is an action of tort brought by an employee of the defendant to recover for injuries received by reason of the fall of an elevator or dumb waiter in a building owned by the defendant, upon which the plaintiff had stepped for the purpose of making repairs.

The evidence tended to show that one Spry was a superintendent and that his principal duty was that of superintendence; that by reason of the violent contact of a table, while being carried up upon the elevator, with the top of the elevator well, a rope holding the elevator parted and as thus disabled the elevator was at the third floor; that the plaintiff and Spry saw that the rope had parted and that Spry determined to repair it. As to the accident the plaintiff testified that he said to Spry, "Hold on, Joe, while I run down the stairs and up the ladder to the motor platform; I can pass the end of the cable up to you from there;" that Spry said, "It is all right, Tom (referring to the plaintiff). Jump on the car. It will be all right;" that he (the plaintiff) hesitated; that Spry said, "Jump on the car it will be all right." The plaintiff then jumped on the car and it immediately dropped to the bottom of the well. The evidence tended further to show that the plaintiff believed and had reason to believe that there

were safety devices to prevent the elevator from falling and that he stepped upon the elevator in reliance upon the assurance by Spry that such an act was safe.   Under all the circumstances the jury would have been justified in finding that the plaintiff was in the exercise of due care, that he did not appreciate and assume the risk, and that the order was negligent

There was therefore a case for the plaintiff, at least upon the second count of his declaration, unless the defendant is saved by the law relating to charitable corporations as set forth in a long line of decisions in this Commonwealth.   See *McDonald* v. *Massachusetts General Hospital*, 120 Mass. 432; *Farrigan* v. *Pevear*, 193 Mass. 147, and cases cited.   But we do not think it can be thus relieved.   Even if it be assumed that the defendant is a charitable institution within the meaning of the term as used in this branch of the law, still there is one fatal flaw in its case.

The defendant had let that part of the building where the accident occurred, to a tenant for purposes entirely disconnected with those for which the defendant was chartered.   The business of the tenant was not charitable.   Moreover at the time of the accident both the plaintiff and Spry by the authority of the defendant were engaged exclusively in assisting the tenant, or rather in carrying out the contract made with the tenant by the defendant. It is entirely immaterial that the money received for rent was to be applied to the general charitable purposes of the society.   At the time of the accident the work in progress was in no way connected with charity, even in its more liberal sense, and the rule of exemption invoked by the defendant is not applicable.

*Judgment for the plaintiff for $2,500.*