## Eastman Gardiner Co. *v.* Permenter.

### [72 South. 234.]

Master and Servant. *Medical treatment. Liability. Duties of master.*
  Where a master makes deductions from the wages of his servants and administers the fund so collected for the benefit of those who fall sick or sustain injury while in his employment and devotes the entire amount thus collected to the payment of the physician to render medical assistance and receives himself no pecuniary profit from the funds thus created, he is not liable for the negligence or unskillfulness of the physician or surgeon employed, provided he has exercised due care in selecting the physician.

Appeal from the circuit court of Smith county.
Hon. W. H. Hughes, Judge.
Suit by J. D. Permenter against Eastman Gardiner & Company. From a judgment for plaintiff, defendant appeals.
The facts are fully stated in the opinion of the court.

*Street & Street* and *T. J. Wills,* for appellant.

*E. L. Dent,* for appellee.

POTTER, J., delivered the opinion of the court.

J. D. Permenter, the appellee in this case, filed suit in the circuit court of Smith county against the appellant, Eastman, Gardiner & Co. The declaration alleged that the plaintiff in the court below, J. D. Permenter, had been employed by Eastman, Gardiner & Co., the defendant, as a laborer engaged about the defendant's lumber business, and that each of the employees, including the plaintiff, were required to pay and did pay from one dollar to one dollar and fifty cents each month out of their salary to the defendant company, and in consideration of this payment the defendant contracted with the plaintiff to furnish him with medical and surgical treatment and necessary medicine in the event he or any member of his family should become sick or injured during their employment by the defendant. Plaintiff charges that on or about the 1st day of August, 1913, while he was in the employment of said defendant, and while the above contract was in force, a member of his family, a little child about six years old, became sick and suffered excruciating pain both in mind and body, and the defendant on that date was immediately notified of the condition of plaintiff's child, and that in violation of its contract, and in violation of "even the common obligations of humanity," failed and refused to comply with its contract to furnish him with a physician and medicine, and that by reason of the willful, gross, and wanton negligence of the defendant and the violation of its contract, the plaintiff's sick child grew worse for want of medical treatment, and that this caused the said sick child to be without medicine and medical treatment for several days, when it was in need of same. The declaration further charges that, if the defendant had furnished a physi-

cian and medicine as it had contracted to do, the sick child in all probability would have recovered. And plaintiff charged that by reason of the existing contract of the plaintiff with the defendant to furnish plaintiff and plaintiff's family with a physician, medicine, and medical treatment, plaintiff was unable to procure the services of any other physician to attend the sick and suffering child, and charged that he was entitled to the services and companionship of his child in normal, healthy condition, and but for the willful breach of the contract by the defendant as set out in the declaration he would in all probability have had the services and companionship of his said child in a normal and healthy condition. Plaintiff alleged in his declaration, also, that on account of the breach of contract complained of he had to wait on his child and spend large sums of money for medicine and medical treatment, and that the defendant knew of the child's condition and its urgent need of medicine and medical treatment, but that nevertheless, in violation of its contract, it had failed and refused to furnish plaintiff's family with either medical treatment or physician as above stated, and that, by reason of its gross and willful negligence in this behalf, plaintiff had been subjected to much inconvenience and loss of time and had suffered great humiliation and had been deprived of the services of his child in a normal and healthy condition, and that the child was irretrievably crippled and deformed, all on account of the defendant's breach of contract as aforesaid; and plaintiff averred that by reason of the willful neglect and refusal of the defendant to furnish a physician, medicine, and medical treatment as stated in his declaration, the plaintiff had been caused much unnecessary annoyance, humiliation, sorrow, and suffering in seeing his child in such a condition, and alleged the loss of services and companionship of his child and loss of time and expense waiting on his said child, and brought his suit for three thousand dollars. A demurrer was filed to the above declaration and over-

ruled; but, in view of the fact that a trial was had in this case and the suit is easily determinable upon its merits, we will not consider the question of whether or not the court was in error in overruling the defendant's demurrer.

The uncontradicted proof shows that the appellee was an employee of the defendant at its lumber camps in Smith county on August 1, 1913, and that the defendant deducted a dollar from the wages of each married employee, including plaintiff, at the commencement of their employment, and a like amount at the beginning of each succeeding month, to cover the cost of medical attention for each laborer and his family, but that the medical attention did not include surgery and obstetrics. The evidence further shows that the entire amount of money thus collected was paid by the defendant company to a physician located at its lumber camps in Smith county, and that this physician was charged with the duty of treating the employees and their families; and the evidence shows conclusively that no profit of any sort was received by the defendant company from this fund, but that the entire amount was expended in payment for the services of the physician employed.

The testimony shows that the appellee, on the occasion in question, was an employee of the appellant and had a little child about two years of age, and that he was living in the camps about two hundred yards from the office of Dr. Harper, who was then the physician in charge of the camps, and that this little child had decayed teeth so that its face was swollen, and that Dr. Harper was called to see the child and prescribed a mouth wash for it, going to the office and sending the medicine back to be applied as directed. The proof shows that this little child was afflicted with cretinism, and that cretinism is a nervous disease enfeebling the whole body and is due to lack of secretion of the thyroid gland and usually results in the enfeeblement of the mind. The proof further shows that this child was born with this diseased condition, and

that the child was also suffering with a disease of the bone and inflammation of the eyelids.

The testimony for the plaintiff shows that the physician was called to see this child and promptly responded on one occasion and prescribed a treatment, but that for eight days, though he had been repeatedly requested to make other visits, he neglected to do so. The physician denied this and testified that he promptly responded to the calls when notified. For the purposes of this suit, however, the jury have resolved the facts in plaintiff's favor.

At any rate, at the most the evidence of the plaintiff establishes that, if Dr. Harper had visited this little child oftener, the best that could have been expected would have been some temporary alleviation of the child's suffering, for part of the little fellow's ailments were incurable, and the others were such as would only yield to surgical operations.

It is clearly established that the physician furnished by the defendant company was a competent man, skilled in his profession, and the defendant had shown no negligence in the selection of the physician furnished.

There was a verdict and judgment for the plaintiff in this case for six hundred and fifty dollars.

It will be noted that the physician had taken charge of the case and had undertaken to treat plaintiff's child, and such injury as was suffered, if any, was occasioned by the negligence of the physician, and not on account of the failure on the part of the defendant to furnish a skilled and competent physician.

A peremptory instruction was asked by the defendant in this case and should have been granted.

There is no showing that complaint was ever made to defendant that its physician would not attend the sick child. The uncontradicted proof shows that the physician employed, Dr. Harper, was a skilled physician and that the defendant company was not negligent in selecting him as a physician for its employees. It is established fur-

ther that the entire fund realized from the payment by the employees for medical attention was devoted by the defendant to that purpose and that no profit was received by it.

It is a well-established rule of law that, where the master makes deductions from wages of his servants and administers the fund so collected for the benefit of those who fall sick or sustain injury while in his employment and devotes the entire amount thus collected to the payment of the physician to render medical assistance and receives himself no pecuniary profit from the funds thus created, he is not liable for the negligence or unskillfulness of the physician or surgeon employed, provided he has exercised due care in selecting the physician.  Labatt on Master and Servant, vol. 5, p. 6216; *Union Pacific Co.* v. *Artist,* 60 Fed. 365, 9 C. C. A. 14, 23 L. R. A. 581; *A., T. & St. F. Ry. Co.* v. *Zeiller,* 54 Kan. 340, 38 Pac. 282; *I. C. R. R. Co.* v. *Buchanan,* 31 Ky. Law Rep. 722, 103 S. W. 272, 11 L. R. A. (N. S.) 711; *Big Stone Gap Iron Co.* v. *Ketron,* 102 Va. 23, 45 S. E. 740; *Wells* v. *Ferry-Baker Lumber Co.,* 57 Wash. 658, 107 Pac. 869, 29 L. R. A. (N. S.) 426.  This case is therefore reversed and dismissed.

*Reversed and dismissed.*