JAMES *v.* YAZOO & M. V. R. Co.*

(Division B. April 15, 1929. Suggestion of Error overruled May 6, 1929.)

[121 So. 819. No. 27843.]

*Corpus Juris-Cyc References: Master and Servant, 39CJ, section 358, p. 245, n. 34; On liability for negligence of physician or attendant furnished by relief department toward which employee contribute, see annotation in 17 L. R. A. (N. S.) 1167; 30 L. R. A. (N. S.) 1207; 48 L. R. A. (N. S.) 531; 21 R. C. L. 395.

*Jones & Stockett,* for appellant.

*Tucker & Tucker, H. D. Minor, Charles N. Burch* and *Clinton H. McKay,* for appellee.

Argued orally by *A. H. Jones,* for appellant, and *H. D. Minor,* for appellee.

ETHRIDGE, P. J. The appellant, T. L. James, was employed by the appellee, the Yazoo & Mississippi Valley Railroad Company, on an application for employment, and while in the employ of the appellee company received an injury to his eye by reason of a cinder striking and lodging in it. At the time of his injury, he had been promoted to the position of engineer, occasionally performing this duty on special runs, but when not acting in this capacity, he would perform the duties of a fireman, and was doing so at the time of the injury.

With the application for employment was an agreement as to hospital department rules and regulations, by which an employee of the appellee company would permit certain deductions from his wages to go to the maintenance of a hospital for the benefit of the employees of the appellee railroad, and also a copy of the rules and regulations with respect to the operation of the hospital department for the benefit of such employees. This contract provided that in accordance with the desire on the part of the company to better safeguard the health and safety of its employees, there is established a hospital department, the purpose and object of which is to provide for the care of the sick and injured employees, but without gain or profit to the railroad company; that such hospital department is in the nature of a co-operative association, supported by a trust fund raised by monthly contributions of the employees and by proportionate expense paid by the company in accordance with benefits derived; that the company will pay all expenses for employees injured on duty, and for care of passengers or nonemployees injured on its right of way, for which

it may be obligated; that all contributors to the hospital department injured off duty will be taken care of at the expense of the hospital department, except as provided in the rules; that the current expenses of the hospital department, after applying all contribution of the employees and other income, will be provided by the company either by contributions or by temporary advances, as the latter may elect; that the company will collect and disburse all funds raised for the hospital department, and in behalf of said department will endeavor to secure through the chief surgeon the services of competent physicians and surgeons in the necessary cities and towns on its lines, and provide accommodations in modern hospitals for the use of sick and injured employees. The contract then provided for the administration of this department, by which a majority of the directors were selected by the appellee company, and a minority by the employees, who selected their representatives by ballot.

When the cinder first entered the eye of the appellant, he attempted to remove it himself, but being unable to do so, proceeded with his work, and later went to his home and to bed. This was on the night after the injury occurred. Upon waking, he still realized that the cinder was in his eye, and not being able to remove it by his own efforts, called on his wife for aid. But she was unsuccessful also. He then applied for medical aid, and one of the physicians employed by the hospital department of the appellee company removed the cinder from his eye and treated it. The eye continued to pain him, having become badly infected, and he was thereupon directed to go to the appellee company's hospital at New Orleans for treatment, which he did. Upon his arrival at New Orleans, early Sunday morning, he took a taxi to the hospital, where his eye was dressed and he was put to bed. In the afternoon, several hours after the appellant's arrival, the appellee's oculist attending such cases ar-

rived and examined his eye. There was some conversation between the employees of the hospital and this doctor to the effect that he would take the appellant to his office for treatment as the hospital did not have the appliances there with which he desired to give the treatment. The appellant thereupon went to such office for treatment, returning therefrom to the hospital, where he remained for several weeks. Appellant was not benefited by the treatment, the result being that he lost the eyesight of the injured eye. During his treatment at the hospital, it appears, his eye was cut open by the surgeon in the hospital. Upon being dismissed from the hospital, he resumed his duties as fireman and engineer with the appellee company, but the heat from the fire in firing the engine so affected his injured eye, and also, through sympathy, started affecting his other eye, that appellant was advised by the doctors to discontinue his runs on the appellee's train, as they thought it would injure or destroy his eyesight.

Suit was brought by the appellant for the loss of his eye, and the value of his employment during his earning expectancy. Appellant also complains that the medical treatment received at Vicksburg was not sufficiently attentive or skillful. This proof consisted largely in appellant's statement that after the company's physician had removed the cinder and treated his eye, his eye became very painful and his wife called the company's physician and told him of her husband's suffering, and requested him to come out and give him further attention; that the physician stated that he could do nothing further, and for her husband to take asperin for the pain, which he did. There was no proof showing that the hospital at New Orleans was not modernly equipped, nor as to the equipment of same. The appellant relies largely upon the statement of the oculist that he preferred to treat him at his office as the hospital did not have the equipment he desired to use. Just what this equipment

is that the oculist desired to use, and whether it was such as would be kept in a modernly equipped hospital, or whether it was such as would be kept by those who would care to make unusual expenditures and risk experimentation, does not clearly appear. The proof in the record is insufficient to show that the doctors and surgeons employed by the appellee company were not competent, the foregoing statement being the only proof upon that proposition.

In *Eastman-Gardiner Co.* v. *Permenter,* 111 Miss. 813, 72 So. 234, the court said: ''It is a well-established rule of law that, where the master makes deductions from wages of his servants and administers the fund so collected for the benefit of those who fall sick or sustain injury while in his employment and devotes the entire amount thus collected to the payment of the physician to render medical assistance and receives himself no pecuniary profit from the funds thus created, he is not liable for the negligence or unskillfulness of the physician or surgeon employed, provided he has exercised due care in selecting the physician''—citing authorities.

We think this decision is controlling in the case here, and that, under the proof in the record, the court below rightfully directed a verdict for the appellee.

The judgment of the court below will therefore be affirmed.

*Affirmed.*