## RHODES *et al. v.* MILLSAPS COLLEGE.

(Division B. Oct. 4, 1937.)

[176 So. 253. No. 32813.]

597

Howie, Howie & McGowan, of Jackson, for appellants.

598

601

604

Luther Manship, of Jackson, for appellants.

606

608

Watkins & Eager, of Jackson, for appellee.

609

610

611

612

Argued orally by **M. M. McGowan** and **J. H. Howie**, for appellants, and by **Pat Eager**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Mrs. Myrtle Rhodes, G. C. Rhodes, adults, and their minor children, Mary, Robert, and Rudine, by their mother and next friend, brought suit against Millsaps College, appellee, for the death of Grover Evans Rhodes,

the twelve year old son of G. C. Rhodes and Mrs. Myrtle Rhodes, said Grover Evans Rhodes having been killed on August 17, 1936, by the elevator in the Millsaps Building, owned by appellee.

The declaration alleges that Millsaps College is a corporation operating an institution of learning in Jackson, Miss., and owning certain real estate among which is the building on the corner of Capitol and Roach streets, which it rents to tenants for office space and business purposes, and, for the accommodation of its tenants, it operates therein an elevator by electrical power, which elevator is operated by employees of appellee; that in the, operation it is caused to travel up and down on ropes and pulleys, and in its construction there are heavy weights so placed as to operate in reverse order to the elevator, and there are windows, for the purpose of giving light and air, opening out of the elevator shaft onto the roof of the adjoining one-story building, which also belongs to appellee. It was also alleged in the declaration that for a long time prior to August 17, 1936, appellee left open the window from the second-story building out onto the roof of the one-story building, and also the window from the elevator shaft onto the roof of said one-story building, and had knowingly permitted small children to crawl through the window from the stairway onto the roof of the adjoining one-story building and to play thereon. It was also alleged that it was the custom of the tenants of said two-story building to throw wrappings and tin foil from cigars and cigarettes and chewing gum out of the windows, and that children of tender years were known to be accustomed to crawl out on said roof to gather this up and that appellee negligently left open the window from the stairway to the roof of the adjoining one-story building, well knowing the habits and disposition of small children, and allowed them to look into the elevator shaft to watch the elevator go up and down. The declaration also alleged that this open window was, in effect, an invitation to all children,

a challenge to their natural curiosity, and that it did actually attract Grover Evans Rhodes, deceased, who, on August 17, 1936, was playing in and about the building above mentioned, having crawled through the window on the stairway, and, while so engaged in play, said Grover Evans Rhodes suddenly put his head into the window opening at the time the heavy weight came down; his head was caught between the window sill and the heavy weight, and was, by the counter weight of the elevator, completely severed from his body. It was further alleged in the declaration that the death of Grover Evans Rhodes was due solely because of the fact that appellee maintained and operated an elevator with the window open at such a height as to become an attraction to small children, and judgment was demanded against appellee.

The appellee pleaded the general issue with notice thereunder setting up facts substantially the same as those in the special plea to be hereinafter noted. There was a motion to strike the notice under the general issue plea, but thereafter a special plea was filed; demurrer was filed thereto, which demurrer was overruled, and, plaintiffs declining to plead further, final judgment was rendered dismissing the suit.

The special plea alleged: (1) That plaintiffs ought not to recover because appellee is a charitable institution, having been created under an act of the Legislature approved February 21, 1890 (Laws 1890, c. 379), as shown by a copy thereof made an exhibit to the plea; (2) that appellee is not incorporated for profit, pays no dividends, has no capital stock, and that all its property was acquired by private donation and is held in trust for charitable purposes; (3) that it does not now, nor did it on August 17, 1936, operate for profit, but that all of its resources, including all donations, legacies, and receipts from students, or otherwise are devoted solely and exclusively to charitable and benevolent purposes; (4) that the building on the corner of Roach and Capitol

streets, in Jackson, Miss., and the lot on which it is located, were donated to appellee by R. W. Millsaps, as a result of whose benevolence said appellee was instituted; that said building constitutes a part of the endowment of appellee; that all revenues therefrom are devoted solely and exclusively to appellee's charitable and benevolent purposes, and all revenues constitute a trust fund devoted to the charitable purposes of appellee, and cannot be diverted from the purpose to which the same has been dedicated; that appellee has, at all times, since its creation, been solely engaged in the operation of a college for the education of the youth, and, while it is denied that the injury and death resulted from any negligence on the part of the appellee, nevertheless, by reason of the foregoing facts, said appellee cannot be held to be liable to appellants in any manner whatsoever.

This special plea was demurred to: (1) Because it was alleged that it did not state a cause of defense; (2) that the building in question is owned by Millsaps College, and is operated as an office building for hire, and therefore said appellee would not be exempt from suit on tort; (3) that, the operation of the building being for hire, appellee would be liable in tort; (4) that no benevolent institution could be exempt from liabiltiy for tort when it occurred in the operation of a business separate and apart therefrom, for profit, even though the profit received is used exclusively for said benevolent institution; and (5) that there is no legal defense set up in said special plea.

The charter of appellee granted in 1890 provides that R. W. Millsaps and certain other persons were a body corporate and politic under the name of "Millsaps College," and thereby they and their successors could sue and be sued, contract and be contracted with, have common seal and break same at pleasure, and could accept donations of real and personal property for the benefit of the college, and do and perform all other acts for its benefit that were not repugnant to the Constitution and

laws of the state or the United States; that said college could confer degrees and certificates, and should keep down the cost of education. It was also provided in said charter that said college could own grounds, not to exceed 100 acres, for its building and campus, and could accept donations or grants of land for the site of said institution, and should be exempt from all state, county, and municipal taxation so long as said college should be kept open and maintained for the purposes contemplated. And the said college was to be under the supervision of the conferences of the Methodist Church in Mississippi.

It will be seen from a careful reading of the special plea that appellee claims complete immunity from liability for negligence of its servants on the ground that it is a charitable institution. It is not alleged in this special plea how the servants placed in charge of the building were selected, nor their experience or qualification.

This court has not heretofore passed upon the question as to whether or not a charitable institution which conducts a business separate and apart from its charity, said business being a commercial venture, is liable for torts of agents in the operation of said separate business, where the funds derived from this business are applied to the charitable purposes of the institution. We have decided that as to the operation of its charity, as such, there is no liability, where it has exercised care and caution in the selection of its servants, for an injury. See Mississippi Baptist Hospital v. Moore, 156 Miss. 676, 126 So. 465, 468, 67 A. L. R. 1116; James v. Yazoo & M. V. R. Co., 153 Miss. 776, 121 So. 819; Eastman Gardiner Co. v. Permenter, 111 Miss. 813, 72 So. 234. In Mississippi Baptist Hospital v. Moore, supra, it was said that, "In such cases the patient's right of action is against the physician personally who treats him, and consequently negligence resulting in the injury is against the servant personally who inflicts the injury or is negligent in performing the duties assigned to him.

All that the hospital is required to do in such case is to exercise due care and caution in selecting the physician or servant; if it is negligent in these respects, then it is liable to the patient, and consequently the liability under the indemnity policy is for this negligence; that is to say, negligence in the selection of suitable servants and physicians and proper facilities ordinarily used in a hospital.''

Our court has never been committed to the doctrine that a charitable institution has full immunity from suit, and that trust funds may not be diverted from that use. In these cases it is recognized there is liability where there is negligence in selecting its agents. While we have no case directly in point to the effect that where a charitable institution engages in a commercial venture, apart from its charity, it is subject to liability as other persons or corporations for injuries, yet in other cases from this court we think the reasoning is analogous, and that the principles of liability there should be announced in the case at bar. In Meridian Sanatorium v. Scruggs, 121 Miss. 330, 83 So. 532, a patient was injured by the negligence of a nurse, and it was held that the hospital was liable since it was being operated for profit. In Enochs v. City of Jackson, 144 Miss. 360, 109 So. 864, a statute granting exemption to certain property was under consideration. There the church had a lot adjoining that on which the church was situated, which was not used except that a plank walk was maintained thereon for entrance to the church annex. It was there held that this lot was not exempt from taxation. In Gunter v. City of Jackson, 130 Miss. 686, 94 So. 842, 27 A. L. R. 1043, it was held that property owned by a religious institution which it is not entitled to own is subject to taxation as other property of like character owned by individuals. In Central Methodist Church v. Meridian, 126 Miss. 780, 89 So. 650, it was held that property owned by a religious society which it was not authorized to hold was subject to taxation. In Millsaps College v.

Jackson, 136 Miss. 795, 101 So. 574, it was held that the building involved in the case at bar was not exempt from taxation under the charter of said college. In the case of Yazoo City v. Birchett, 89 Miss. 700, 42 So. 569, it was held that a municipality which embarks in private business, as distinguished from governmental, for profit, has its liability determined by the rules applicable to private operations. There a telephone lineman climbing a pole of his company was injured by coming in contact with a guy wire of the electric plant owned by the city. The court, speaking through Judge Calhoun, said that, "When a city embarks in the management of any utility for profit, it is liable, or not liable, by precisely the same rules applicable to private corporations or individuals conducting such enterprises. The fact that the city was the owner probably explains the serious tone of the defense. Many times the importance of a party makes the gravity of the case." The reasoning in this case is analogous to the case at bar. A building not used in its collegiate work is not exempt from liability for torts of its agents in such operation. In the case of Johnson, City Tax Collector, v. Mississippi Baptist Hospital, 140 Miss. 485, 106 So. 1, it was held that where a hospital maintains a home for nurses employed in the hospital, where they live when not on duty, such building is not exempt from taxation within the meaning of section 4251, Code 1906. In the case of West Monroe Mfg. Co. v. Town of West Monroe, 146 La. 641, 83 So. 881, the Supreme Court of Louisiana held that, while a municipality is not liable for damages occasioned in a governmental or public function, it stands on the same footing as an individual in the case of private functions.

There is considerable confusion in the different states as to the basis of liability or immunity therefrom, but it seems to us that where a charitable corporation enters into business apart from its charity, although with the purpose of securing revenue to be used in its charity,

it is liable in tort to the same extent as a private corporation.

In the case of Holder v. Massachusetts Horticultural Society, 211 Mass. 370, 97 N. E. 630, the Supreme Court of that state held that in an action against the owner of a building operated for profit, in which the plaintiff was injured by the fall of an elevator on which the plaintiff had stepped by the direction of a superintendent, when plaintiff and the superintendent were engaged in adjusting the lifting cable of the elevator which had fallen, and plaintiff was relying upon the assurances of the superintendent that it was safe, and the elevator dropped to the bottom of the well, there was liability against the defendant.

In McKay v. Morgan Memorial Cooperative Industries & Stores, Inc., 272 Mass. 121, 172 N. E. 68, it was held that charitable corporations are not free from liability for negligence in carrying on business for profit.

In Gamble v. Vanderbilt University, 138 Tenn. 616, 200 S. W. 510, L. R. A. 1916C, 875, it was held that to the extent of income derived from an office building operated largely for profit, and separate from its educational plant, though occupied, in part, by its law school and library, Vanderbilt University was liable to a tenant's representatives for his death in an elevator due to negligence, although the university was a charity, and the general rule is that charitable trust funds are not to be depleted by subjection to liability for negligence. There is valuable discussion in this case, but we will not quote therefrom in order to not unduly lengthen this opinion. The majority of the courts of the country hold that a person injured by the negligence of some industry not connected with a charity may recover for such injury.

We are thoroughly of the opinion that where a charitable institution, or corporation, goes into an independent business, apart from its charity not to be operated for any of its charitable purposes, but to be operated solely

for profit, or to secure funds for its charitable purposes, it is liable for injuries as other corporations. It will be noted from the charter of appellee in the case at bar that no specific power is given thereby to operate a building which was donated to it subsequent to the granting of the charter. It could, of course, sell the building and apply the proceeds to its charity; it could lease the building to be operated by the lessee, or, by the grace of the sovereign, it could operate the building itself, but its charter, per se, did not give it the power to operate a business disconnected with its charity, consequently it is subject to the general law as to such operation.

We decide this question solely on the sufficiency of the special plea, but we do not decide whether the appellee was liable for the death involved, as we do not know what the facts would be when finally developed.

It follows that the judgment of the court below must be reversed, and the demurrer to the special plea sustained.

Reversed and remanded.