# CHARLESTON.

FRANTZ ROBERTS v. OHIO VALLEY GENERAL HOSPITAL

(C. C. 331.)

Submitted March 10, 1925.    Decided March 17, 1925.

CHARITIES—*Charitable Hospital Liable to Patients for Injuries Because of Incompetency of Physicians, etc., if It Fails to Use Reasonable Care in Their Selection and Retention.*

It is incumbent on a charitable hospital to use reasonable care in the selection and retention of its physicians, nurses, and attendants; and for failure to do so, it is liable for injuries received by its patients due to their incompetency.

(Charities, 11 C. J. § 107.)

(NOTE:—Parenthetical references by Editors. C. J.—Cyc. Not part of syllabi.)

Case certified from Circuit Court, Ohio County.

Action by Frantz Roberts against the Ohio Valley General Hospital. After sustaining objection to defendant's special plea and rejecting it, court certified case.

*Ruling affirmed.*

*William B. Casey,* for plaintiff.
*Hubbard & Hubbard,* for defendant.

HATCHER, JUDGE:

The plaintiff filed a declaration in the circuit court of Ohio county for damages, alleging an injury to her from the negligent and unskillful treatment of one of defendant's nurses, while she, plaintiff, was at defendant's hospital as a paying patient.

The defendant filed a special plea, in the words and figures following:

> "The defendant says that it is incorporated as a non-stock association under chapter 55 of the Code of West Virginia for the purpose of conducting a hospital without profit to its members or to other persons; that by reason of its charitable work it has at all times operated its hospital at a loss, and that its deficits are from time to time made up by charitable donations of money and materials, by the income of charitable bequests and by allowances from the county of Ohio and the State of West Virginia. And the defendant, while not admitting that it has been guilty of negligence as charged in the declaration, says that it has no property or funds out of which a judgment in this action could be paid excepting the funds which are administered as a charitable trust in the care of sick and injured persons and in the training of nurses and physicians. And this the defendant is ready to verify."

The court sustained an objection to, and rejected the plea. The case has been certified here on the joint application of both parties to the suit, who desire a ruling on the sufficiency of the special plea.

The exact question involved in this case has never been determined by this court. In looking to the decisions of other states, we find widely divergent views. Courts have not only resolved this question differently, but have given variant reasons respectively for the same conclusions. Generally speaking, there are three lines of decisions in this country.

1. A few courts have held a charitable institution equally liable to a paying patient for the negligence of an employe as an institution conducted solely for profit. A leading and well-reasoned case adopting this view is that of *Tucker* v. *Mobile Infirmary Assn.*, an Alabama case, reported in 68 So. 4.

2. Another line of decisions, quite respectable in authority and number, have exempted charitable institutions from any liability whatsoever for the negligence of its employes. The reasons for this holding are several. In some cases it is held that as contributions are made for the specific purpose of beneficence, the fund so established must be held inviolate for the purposes of the trust, and cannot be diverted to the payment of judgments for torts. Some opinions regard the acceptance by the patient of the benefit of the charity as an *implied waiver* of any claim for neglect. Other courts have exempted charitable institutions on the theory that the rule of *respondeat superior* is a hard rule at best, and should not be applied except in cases where the service bestowed by the employe yields a profit to the employer.

Cases illustrating the second line of decisions are *Downs* v. *Harper Hospital*, (Mich.) 25 L. R. A. 602; *Jansen, admr.*, v. *Infirmary* (Me.) 78 Atl. 898, 33 L. R. A. (N. S.) 141, and *Roosen* v. *Brigham Hospital*, 235 Mass. 66, 14 A. L. R. 563, 126 N. E. 392. The holding in the Massachusetts case is as follows:

> "A Hospital run as a charity is not answerable in tort to a patient for negligence of its managing officers in selecting incompetent servants and agents."

3. By far the most generally accepted theory, and that which is supported by the great weight of authority throughout the states is that a charitable hospital should not be held

liable for the negligence of employes when reasonable care has been used in their selection and retention. These decisions are generally based on *public policy*. The law in this respect is fairly stated in 11 C. J. 377, par. 108:

> "HOSPITALS. Except in some jurisdictions, it is a rule that those who furnish hospital accommodations and medical attendance, not for the purpose of making profit thereby, but out of charity, or in the course of the administration of a charitable enterprise, are not liable for the negligence or other tortious acts of the physicians, nurses, attendants, or other persons in their employment or service, but only for their want of ordinary care in selecting them. Also, except in some jurisdictions, the same rule applies where plaintiff has paid for the services rendered, where the amount received was not for private gain, but to ac- accomplish more effectually the purposes for which the charity was founded."

Among the leading cases following this doctrine are *Weston* v. *Hospital*, (Va.) 107 S. E. 785, 23 A. L. R. 907; *Taylor* v. *Hospital*, 104 Ohio State 61, 135 N. E. 287; and *Powers* v. *Homeopathic Hospital*, 65 L. R. A. 372, 47 C. C. A. 122, 109 Fed. 294.

Each of these cases is well considered and contains reference to a host of decisions. Exhaustive citation of authority supporting this theory may be found in a note to *Duncan* v. *Sanitarium*, a Nebraska case, reported in A. & E. Anno. Cases, Vol. 30, 1913 E. page 1129, and in note to *Roosen* v. *Hospital*, *supra*.

Public policy demands that charitable institutions be fostered and preserved. To this end, the law should deal with them more leniently than with institutions conducted solely for private gain. No human endeavor of any magnitude is immune from mistakes. No matter how strict a rule might be enforced against institutions of this nature, mistakes in treatment would occasionally happen. Employes and servants selected with ordinary care, however, will execute the charity with but few mistakes. If no care be had in their selection, mistakes will necessarily multiply. The purpose of the found-

ers of a charity is to help those who need assistance. They propose not unskillful or incompetent aid, but humane and efficient treatment. The subject of an employe's negligence is harmed instead of helped by the charity. The will of the donors is thwarted instead of served when an object of their beneficence suffers from such neglect. When administered by incompetent servants, charity, instead of being a great boon to humanity, may become a menace. One who enters a hospital expects and has a right to expect, more skillful treatment than is obtainable in the home. If such institutions be not held to reasonable care in the selection of their employes, confidence in their efficacy will be shaken. Many who need, will fear to accept hospital treatment, and those who do apply therefor, will lack the faith therein that is so frequently half the battle in the contest with disease.

In order that the high purpose of the donors of a charitable hospital may be best served, that those who need aid may not hesitate to accept the charity, and to prevent as far as may be human suffering from acts of negligence or incompetence, it would seem imperative to require of those in charge reasonable care in the selection and retention of the employes.

The fact that one is a paying patient does not alter the rule. Such patient is the recipient of the donors' gratuity only in a lesser degree than one who makes no payment. The hospital building, with its equipment, management, and its great possibilities for the alleviation of suffering, was provided by charity. In using the organization made possible and supported by that charity, a paying patient, to that extent, benefits by the charity. As said in the opinion of the court in *Powers* v. *Massachusetts Homeopathic Hospital, supra*:

> "In our opinion, a paying patient in the defendant hospital, as well as a non-paying patient, seeks and receives the services of a public charity.
>
> That such a hospital in its treatment of a rich patient shall be held to a greater degree of care than in its treatment of a pauper is not to be tolerated. Certain luxuries may be given the former which the latter does not get, and this for various reasons; but the degree of protection from unskilled and careless nurses must be the same in both cases."
>
> 98 W. Va.

Because of its failure to allege that the defendant used reasonable care in selecting the nurse of whose negligence the plaintiff complains, we hold that the plea as presented does not in terms state a defense to the action.

The judgment of the lower court is therefore affirmed.

*Ruling affirmed.*