MISSISSIPPI BAPTIST HOSPITAL *v.* MOORE.

(Division B. March 3, 1930.)

[126 So. 465, No 28482.]

Watkins, Watkins & Eager, of Jackson, for appellant.

Green, Green & Potter, of Jackson, for appellee.

Argued orally by **P. H. Eager**, for appellant, and by **Chalmers Potter**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Mrs. Moore was plaintiff in the court below and filed a declaration against the Mississippi Baptist Hospital, chartered and organized under the laws of Mississippi, alleging that on the —— day of May, 1928, plaintiff fell and injured her arm; that her attending physician advised her that he was afraid that the arm had been fractured, and it would be necessary for her to have an X-ray picture made to discover whether or not this was a fact. That the said defendant was the owner of an X-ray machine, suitable for taking pictures of the bony structure of the body from which pictures one skilled in reading X-ray pictures can tell whether or not any portion of the bony structure, so taken, is in perfect or imperfect condition, and said defendant has agents or employees in charge of said machine, whom it holds out as being experts in the taking of said pictures, and whom it holds out as being capable of taking a picture, which will disclose to one skilled in the reading of such pictures, whether or not the bone is broken.

That on the morning of the said day and date, the plaintiff requested the defendant to take an X-ray picture of her arm so that it might be disclosed whether or not the said arm was broken, and the plaintiff agreed to do so, and it then and there became the duty of the defendant to use a high degree of care and caution and skill in taking said picture, so that the X-ray picture so taken would disclose whether or not the arm was broken, and to report the true facts to plaintiff as was shown by the said picture, but this the defendant wholly failed, neglected, and refused to do, but then and there negligently, and carelessly took a picture that did disclose a break in said arm, and did then and there negligently and willfully fail to disclose said condition to plaintiff. That in truth the said arm was broken, but the said picture made and shown to the plaintiff's attending physician did not show

the break, and relying on the skill and care of the defendant in taking said picture, the attending physician treated said arm for a sprain, and not for a break. That had the report of the true picture been carefully and properly made, the arm would have healed properly and perfectly, but that, because of the negligence aforesaid, of the said defendant, and because said plaintiff was not treated for a fractured arm because the report of said picture failed to disclose said fracture, the said arm failed to respond to the treatment, so given it, and is now permanently and totally disabled, and plaintiff suffered exceeding pain, both mental and physical, all because of the negligence of the defendant aforesaid.

In the second count in the declaration plaintiff alleged the injuring of her arm as stated above. That it was necessary to take an X-ray picture to disclose whether or not the arm was fractured. That the defendant was the owner and operator of an X-ray machine and held itself out as having a skilled person to take such picture, and did take a picture of plaintiff's arm, and plaintiff agreed to pay, and did pay, a reasonable fee for taking such picture, and said defendant after so contracting did take a picture of her arm, which picture did not disclose the true condition thereof. That the arm was broken and the picture failed to disclose such break. And because of the breach of contract the plaintiff's arm was treated for a sprain and not for a break, and because of the improper treatment, caused by the said breach, the arm of said plaintiff has become permanently and totally impaired, and plaintiff has suffered much pain, mental and physical, and prayed for damages.

The defendant filed a general issue and special plea alleging that, as a charitable organization, organized under the laws of the state of Mississippi, and not incorporated for a profit and not operating any business for profit and not having any capital stock—all the property owned by it is acquired by private donation and is held

in trust for charitable purposes—that it does not now, nor did it upon the day and date alleged in plaintiff's declaration, operate any business for profit, but that all of its revenues, including all donations, legacies, and all receipts from pay patients, and all revenues from every other source whatsoever, are devoted solely and exclusively to charitable and benevolent purposes and to the care and treatment of charity patients, and that no part of its revenues is paid out to the incorporators or patrons for profit or otherwise; that the funds received from the pay patients, donors, and all other sources constitute a trust fund devoted to charitable purposes, and which cannot be diverted from the uses and purposes to which the same have been dedicated. That its hospital is operated by agents and servants selected by it, and that the defendant has at all times used all reasonable care and diligence in the selection of its agents, servants, and employees, including the said Dr. V. W. Maxwell, who operates the X-ray machine.

The plaintiff first filed a demurrer to this special plea, and afterwards withdrew it and filed a replication to said plea, in which she alleged that she ought not to be barred from having and maintaining her action against the defendant, because she says that it is not contrary to the public policy of the state of Mississippi to maintain this action against said charity, nor will the trust funds of said charity be dissipated, or the gifts of the donors to said charity be diverted to pay any judgment that might be rendered herein, because the said defendant has heretofore, and had at the time of the injuries complained of, indemnified itself against liability here sought to be established against it by liability insurance in a good and solvent insurance company, fully able to pay any judgment that might be rendered herein, and duly qualified to do business in the state, in a sufficient amount to fully protect itself against any judgment that

might be rendered herein, and said insurance company is defending this suit as such indemnitor.

To this replication the defendant pleaded a rejoinder, which said it is not true that plaintiff ought not to be barred from having and maintaining her action against said defendant, for the reason that so to do and have is not contrary to the public policy of the state of Mississippi, and that for her so to do and have thereby the trust funds of the said charity shall not be dissipated, nor will the gifts of the donors to said charity defendant be diverted to pay any judgment that might be rendered in this case by reason of the fact that said defendant has heretofore, and at the time of the injury complained of had, indemnified itself against liability here sought to be established against it by liability insurance in a good and solvent insurance company, fully able to pay any judgment that might be rendered herein, and the defendant expressly denies that by reason of the aforesaid matters, as set forth in the plaintiff's replication to defendant's special plea, that plaintiff has any right to recover a judgment against the defendant in this case. And further says and does hereby expressly deny that at the time of the injuries complained of that it had indemnified itself against the liability here sought to be established by liability insurance in a good and solvent insurance company, fully able to pay such judgment; and defendant expressly denies that it has now, or had at the time of the injury complained of by plaintiff, any contract of indemnity whereby said indemnitor will pay any judgment rendered herein, and denies that it has any contract with any indemnitor whereby such indemnitor can be made to pay any judgment rendered herein for the plaintiff.

It is admitted in the argument that the defendant is a charitable corporation holding its funds in trust for the purpose of its organization, but the liability is sought to be sustained upon the ground alone that the defendant

had an insurance policy which would indemnify it against the negligence complained of, and that this policy had the effect, in the present case, of abrogating the rule as to charitable organizations not being liable for the negligence of their employees and physicians, where due and reasonable care had been made in selecting them. It is only necessary then to consider the terms of the policy and determine therefrom whether or not the policy operated for the benefit of the plaintiff, and whether its terms cover the acts of negligence declared upon. There is no dispute in the testimony that the physician who operated the X-ray machine for the defendant was a competent and skillful person, skilled in the operation and use of such machine, and that he was selected by the defendant with due care and upon inquiry as to his qualifications. The indemnity policy, relied upon by the plaintiff to support liability, contains the following:

"In consideration of two hundred sixty and 00/100 dollars ($260) and of the statements contained in the schedule hereinafter set forth, which statements the assured makes on the acceptance of this policy and warrants to be true, does hereby agree

"(1) To indemnify the assured designated in statement 1 of the schedule of statements against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death suffered, or alleged to have been suffered, by any patient or patients under treatment at the hospital described in the schedule, in consequence of any malpractice, error or mistake occurring in the course of said treatment, during the term of this policy.

"(2) To defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim, whether groundless or not, for damages on account of bodily injuries or death suffered, or alleged to have been suffered, by any patient or patients under treatment at the hospital described in the schedule, in

consequence of any malpractice, error or mistake occurring in the course of said treatment, during the term of this policy.''

Condition L of the policy reads as follows: ''Condition L. If the limitation of time for notice of claim or for any legal proceeding herein contained is at variance with any specific statutory provision in relation thereto, in force in the state in which this policy covers, such specific statutory provision shall supersede any such condition in this contract inconsistent therewith.''

In condition I of the policy we find this statement: ''Condition I. Without prejudice to the rights of the assured as respects any malpractice, error or mistake that has occurred during the period this policy has been in force, this policy may be canceled by the company at any time by written notice to the assured at the address given herein, stating when the cancellation shall be effective. It may be canceled by the assured by like notice to the company. If canceled by the company, the company shall be entitled to the earned premium pro rata; if canceled by the assured, the company shall be entitled to the earned premium calculated by the customary short-rate table. The check of the company, mailed to the assured at the address given herein, shall be a sufficient tender.'' ·

By other provisions of the policy the hospital was prohibited from voluntarily assuming any liability, and prevented, without the consent of the company previously given, from incurring any expenses or settling any claim, except at its own cost, and prevented from interfering in any negotiation for settlement or in any legal proceeding conducted by the company on account of any claim. Whenever requested by the company, the assured shall aid in securing information and evidence and the attendance of witnesses, in effecting settlements and in prosecuting appeals.

Another provision stated that no action shall lie against the insurance company to recover for any loss under or by reason of this policy, unless it shall be brought by and in the name of the assured for loss actually sustained and paid in money by the assured in satisfaction of a judgment after actual trial of the issue, nor unless such action is brought within two years after the rendition of such judgment. The company does not prejudice by this condition any defenses to such action it may be entitled to make under this policy. And, in case of payment of loss or expense under this policy, that the company shall be subrogated to the amount of such payment to all rights of the assured against any person, firm, or corporation as respects such loss or expense.

In the schedule of indorsement it is provided:

"It is hereby understood and agreed that the premium for policy to which this endorsement is attached is based upon data specified in the following table:

| Classification. | Number. | Rate. | Premium. |
|---|---|---|---|
| Beds—not in excess of fifty | Fifty (50) | $3.00 each | $150.00 |
| Beds—in excess of fifty | Thirty (30) | 2.00 each | 60.00 |
| Pharmacists | None | 5.00 | .... |
| Physicians, Surgeons, Dentists, Oculists or Internes attached to the hospital staff | None | 10.00 | .... |
| X-ray Machines | Two (2) | 25.00 | 50.00 |
| Ambulances | None | 10.00 | .... |
| Total Premium .... | | | $260.00" |

It will be seen from a reading of the provisions of the policy that it was to indemnify the hospital in cases where liability was imposed by law. In other words, it was an indemnity to indemnify the hospital from liability when such liability was imposed by law, and not a con-

tract to insure the patients of the hospital against negligence of the employees of the hospital. If the hospital was not liable for negligence independent of the policy, there would be no recovery by the hospital under the terms of the policy; neither the hospital nor the insurance company here provided for liability in favor of patients, where none existed by law. As it is admitted that the company is a charitable institution not incorporated for private benefit, but its funds are to be devoted to charitable purposes, it is not necessary for us to determine in this suit whether there is any difference in the liability of the hospital to patients who pay the ordinary and customary hospital fees and charges and those patients who do not pay for such hospital facilities and treatment.

This court has decided that charitable institutions administered solely for charity and not for benefit, and which do not receive profit from the operation of such institutions, are not liable for the negligence of their servants and physicians, where the hospital has exercised due care and caution in selecting such agents and physicians. James v. Y. & M. V. R. R. Co., 153 Miss. 776, 121 So. 819; Eastman Gardiner Company v. Permenter, 111 Miss. 813, 72 So. 234. In such cases the patient's right of action is against the physician personally who treats him, and consequently negligence resulting in the injury is against the servant personally who inflicts the injury or is negligent in performing the duties assigned to him. All that the hospital is required to do in such case is to exercise due care and caution in selecting the physician or servant; if it is negligent in these respects, then it is liable to the patient, and consequently the liability under the indemnity policy is for this negligence; that is to say, negligence in the selection of suitable servants and physicians and proper facilities ordinarily used in a hospital. The policy has a basis upon which to operate, and by its terms is limited to cases where liability is

imposed by law. It did not contract to indemnify the patients against the negligence of the physicians or servants of the hospital, if there was no liability of the hospital under the law of the land in respect thereto. If the indemnity had been taken without a basis for legal liability under the same situations, it might be permissible to construe it so as to cover some liability in order to give effect to the contract. In other words, the court would be reluctant to hold that a contract of insurance, of which the premium had been collected, could not be given any operation. But where it has a legal basis to operate, and where its terms are clear and plain, it will be construed according to its plain terms and given the proper field of liability.

We think, also, that it is exceedingly doubtful whether or not the plaintiff's evidence would be sufficient to show negligence, at least recoverable negligence. There is much testimony in the record to the effect that the treatment given the patient by her physician, who is dead and did not testify at the trial, was proper treatment, even if the fracture had been disclosed in the picture. The plaintiff's witness who testified most strongly for the plaintiff's condition leaves it doubtful whether or not the injury could have been prevented by any kind of treatment. The most that he could say about it was that it was probable that, had Dr. Hamilton known of the fracture, he could have prevented the ankylosis of the elbow, and, if he had known of the fracture, that the arm would have been put into a somewhat different position in anticipation of the possible ankylosis. He testified that it was impossible to prevent ankylosis in some cases. Just what percentage of cases it arose in is not disclosed, but it is clear from his testimony that the doctor could not say with any degree of certainty that ankylosis would have been prevented had the fracture been disclosed.

We deem it unnecessary to go into any analysis of the various authorities upon the liability of hospitals in

other states, as on the pleadings and admissions in the present case our court has held that the hospital is not liable for negligence of the physicians employed by it, where it has exercised due care in their selection. The bond upon which the plaintiff relies as a basis of action seems to be a new application of principle in this state. We think the terms of the bond are controlling, and that they are clear and unambiguous and do not support a basis of legal liability independent of pre-existing liability, or liability existing independent of the bond of the hospital in favor of the plaintiff. Judgment of the court below will, therefore, be reversed, and judgment rendered here for the appellant.

Reversed and judgment for appellant.