OLIVE L. FISHER

*v.*

OHIO VALLEY GENERAL HOSPITAL ASSOCIATION

(CC 794)

Submitted September 23, 1952. Decided December 22, 1952.

*Goshorn & Goshorn, John L. Goshorn* and *D. J. Savage,* for plaintiff.

*O'Brien & O'Brien,* for defendant.

BROWNING, JUDGE:

This action of trespass on the case was instituted by Olive L. Fisher in the Circuit Court of Ohio County, on August 7, 1951, against the Ohio Valley General Hospital Association. The declaration consisted of two counts, the first count alleging that the defendant was the operator of a hospital; that while the defendant was so operating

such hospital, the plaintiff's physician caused her to be entered as a paying patient at the said hospital for treatment, and that it then and there became the duty of the defendant to take due and proper care of the plaintiff in the treatment of her illness; but, that, the defendant, disregarding its duties in that behalf, did so unskillfully and negligently conduct itself by and through its servants, that plaintiff, in the course of her treatment, was allowed to fall to the floor of the hospital and sustain serious injuries.

The second count of the declaration is substantially similar to the first count except that it alleges the duty of the defendant to use reasonable care in the selection and retention of its servants, agents and employees, and especially one Phyllis A. Bahanna, a nurse's aid, whose negligence it was alleged caused the plaintiff's injury; the negligent breach of that duty and the consequent injury to the plaintiff.

The defendant filed its special plea to the declaration in which it alleges that it is a nonstock, nonprofit association; that, by reason of its charitable work it has, at all times, operated at a loss; that its deficits are made up or offset by charitable donations, and that, while not admitting any negligence, it has no funds out of which any judgment in this action could be paid except those funds which are administered by it as a charitable trust.

The plea further alleges that the defendant used reasonable care in the selection and retention of its agents and employees to whose care plaintiff, as a paying patient, was committed at the time she sustained the injuries alleged.

The plaintiff filed a demurrer to the defendant's special plea on the ground that a charitable hospital corporation is liable for the torts of its agents and employees in the same manner as a corporation organized for profit, and filed a special replication in which she alleges that the defendant carried liability insurance out of which a judgment could be paid.

The defendant demurred to plaintiff's special replication, assigning four separate grounds, the substance of which is to the effect that the coverage afforded by a liability insurance policy does not create liability in instances such as this, where the policy holder is immune from liability by reason of its charitable nature, and moved to strike plaintiff's special replication from the record.

The trial court overruled plaintiff's demurrer to defendant's special plea, sustained defendant's demurrer to plaintiff's special replication, granted defendant's motion to strike plaintiff's special replication, and, upon its own motion, certified the following questions to this Court:

> (1) Whether a charitable hospital is liable to a paying patient for negligence of its servants, agents and employees in the same manner as a corporation organized for profit?

> (2) Assuming that said charitable hospital organization is immune from liability for the negligence of its servants, agents and employees, where reasonable care was used by said organization in the selection, training and retention of said servants, agents and employees, nevertheless, does the fact that said charitable hospital carried liability insurance create liability where, under the assumption, none existed before?

The trial court answered both of these questions in the negative.

There is a wide divergence of opinion among the various states upon the subject of liability of a charitable hospital to its patients for negligent injuries by its servants, agents and employees. At one extreme, we find the doctrine laid down in the states of Massachusetts and Illinois which hold that a charitable hospital is immune from liability for the negligent act of its servants, agents and employees, whether directed toward a patient of the hospital or a stranger at a place remote from the institution. *Foley* v. *Wesson Memorial Hospital,* 246 Mass. 363, 141 N. E. 113, and *Simon* v. *Pelones,* 263 Ill. App. 177.

We find on the other hand that at least two states have gone to the opposite extreme and have completely repudiated the doctrine of the immunity of charitable hospitals, and place them in the same category as private institutions operating for profit. The majority of the states, however, with some qualifications, have adopted a middle view and exempt the charity from liability as to beneficiaries, though imposing liability in the case of strangers. The many theories upon which the courts have upheld the immunity of charitable hospitals from suits by beneficiaries may be generally summarized and enumerated as follows:

First: The trust fund doctrine based upon the theory that if funds from the trust could be used to compensate persons for the negligence of the servants, agents and employees of the charitable organization, the trust fund would be diverted to purposes never intended by the donor, and the charitable purposes of the creators of the trust frustrated. It was upon this theory that the non-liability of charitable institutions was first declared in *Feoffees of Heriot's Hospital* v. *Ross,* 12 Clark & Fin. 507, 8 English Reprint 1506. This English case was decided in 1846, but exactly twenty years later the doctrine of the *Ross* case was specifically overruled in *Mersey Docks and Harbor Board Trustees* v. *Gibbs,* L. R. 1, H. L. 93, 11 English Reprint 1500. The English courts have not since the decision in the latter case recognized the trust fund theory as a ground of immunity in this type of case. However, in *McDonald* v. *Massachusetts General Hospital,* 120 Mass. 432, 31 Am. Rep. 529, decided in 1876, and apparently the first American decision upon the question, the court chose to follow the *Ross* case rather than the *Gibbs* case. There have been numerous American decisions in accord with the *McDonald* ruling. 10 Am. Jur., Charities, § 146; 14 C. J. S., Charities, § 75; and annotations thereunder.

Second: Implied waiver. It has been stated in applying this doctrine that the charitable organization is exempt from suit on the ground that a person who accepts the

benefits of a private or public charity impliedly enters into a relationship which exempts his benefactor from liability for the negligence of his servants, agents and employees for administering the charity, particularly if the benefactor has used due care in selecting those servants. In other words, there is an assumption of risk by the person who seeks and receives the services of such a charity.

Third: The inapplicability of *respondeat superior* to charitable organizations is based on the ground that medical attendants do not, in a true sense, assume the relationship of master and servant.

Fourth: Public policy.

There has been no attempt, nor do we consider it necessary, to cite all of the case law under each of these headings, either in support of the position or in criticism of it. For a comprehensive discussion of the subject see 10 Am. Jur., Charities, § 140, et seq., and 14 C. J. S., Charities, § 75.

This Court first passed upon this question in 1925 in the case of *Roberts* v. *Ohio General Hospital,* 98 W. Va. 476, 127 S. E. 318; 9 M. J., Charitable Hospitals, 474. In that case, the plaintiff filed a declaration for damages, alleging an injury due to the negligent and unskillful treatment of one of the defendant's nurses while the plaintiff was at the defendant's hospital as a paying patient. The decision in that case committed this Court to the principle of conditional immunity, and held that a charitable hospital is liable to patients for injuries due to the negligence of its physicians, nurses and attendants only in instances where it has been negligent in the selection and retention of such employees. If the hospital uses reasonable care in the selection and retention of such employees, then it is immune from liability for their negligent injury to a patient of the hospital. It would appear from the language of the opinion in the *Roberts* case that the decision granting qualified immunity to a

charitable hospital was based upon public policy. Cf. *Shaffer* v. *Monongalia General Hospital,* 135 W. Va. 163, 62 S. E. 2d 795.

The trial court, relying upon the authority of the *Roberts* case, answered the first question certified to this Court in the negative, and the second question similarly upon the assumption that the added fact, not present in the *Roberts* case, that the defendant here carried liability insurance would not change the result. We are urged by the plaintiff in error to abandon the doctrine of the *Roberts* case, or in the alternative to extend the liability of charitable hospitals beyond the specific ruling in that case, and impose liability upon the factual situation present in this proceeding.

As before stated, the theory of trust fund immunity has been disapproved and severely criticized by several American courts, and is completely discredited in the English law. The principal arguments raised against the trust fund theory of immunity are to the effect that those who contribute to the creation of such a fund for the establishment of a hospital, or thereafter contribute for its maintenance, do so with the realization that some of such funds may be expended for causes other than the immediate services to indigent patients, and that the purity of the aims of a charitable trust should not justify its torts.

The implied waiver theory likewise has been attacked upon many grounds, principally that it is a violent assumption to say that one entering a hospital unconscious or delirious, or too young to understand the meaning of a contract, impliedly entered into a relationship which would exempt the administrator of the charitable institution from liability for the negligence of its servants in administering the charity. There has been little support for exempting charitable hospitals from liability on the basis that they are performing a public function, and, therefore, performing a public duty. The view that medical attendants in hospitals are not servants of the institution, but rather the servants of the patients, so

long as they are in attendance upon the patient, is primarily based upon the doctrine of the *Roberts* case that the hospital is liable only if negligent in the employment and retention of its personnel.

The criticism to the exemption from liability of charitable hospitals of the doctrine of *respondeat superior* is to the effect that the master and servant rule applies almost universally whether the master is engaged in an enterprise which requires him to have employees for profit or otherwise.

We are aware of and have carefully considered the criticism that has been directed against the doctrine of exempting charitable hospitals from liability to a beneficiary upon the ground of public policy. The principal argument in support of this criticism is to the effect that while the public has an interest in the maintenance of a public charity, it also has an interest in requiring every person and corporation which undertakes a performance of a duty to perform it carefully, and to that extent it has an interest against exempting any person and any such corporation from liability for its negligence. It must be observed, however, that the *Roberts* case does not grant complete immunity to such institutions, but rather a qualified immunity which requires that those who operate the institution must use due care in the selection of its personnel, and if negligent in that regard may be liable. The fact that a patient in such an institution pays the usual fee for services rendered, and perhaps a fee comparable to that required of him in a hospital operating for profit, is a feature that has caused several courts to depart from the principle of immunity, and is another source of criticism of the doctrine of the *Roberts* case. We do not believe that any division of immunity as between paying patients and those who accept charity of an institution should be established. It would be preferable to remove the immunity of the hospital to all of its patients rather than to place the paying ones in a separate and favored position over their less fortunate fellow patients.

"The fact that patients who are able to pay are required

to do so does not deprive a corporation of its eleemosynary character, nor permit a recovery for damages on account of the existence of contract relations. The amounts thus received are not private gain, but contribute to the more effectual accomplishment of the purpose for which the charity is founded." 10 Am. Jur., Charities, § 151.

It may be argued with some degree of reason that all persons who administer a charitable trust fund are agents or servants of the trust, and that there is no more reason to impose liability on a charitable hospital because of the negligence of one class of servants, i.e., the trustees, or those who administer the affairs of the hospital, than there would be to impose liability for the negligence of another class of servants, i.e., the physicians, nurses and attendants who are employed by those who govern the institution. On the other hand, there is no opportunity for detailed or direct supervision of the personnel of such an institution by those who select a staff, and after due care has been used in selecting them, and no negligence has been shown in retaining them, the reason for the doctrine of qualified exemption is apparent whether one agrees or disagrees with it.

We quote from the body of the opinion in the *Roberts* case:

> "Public policy demands that charitable institutions be fostered and preserved. To this end, the law should deal with them more leniently than with institutions conducted solely for private gain. No human endeavor of any magnitude is immune from mistakes. No matter how strict a rule might be enforced against institutions of this nature, mistakes in treatment would occasionally happen. Employees and servants selected with ordinary care, however, will execute the charity with but few mistakes. If no care be had in their selection, mistakes will necessarily multiply. The purpose of the founders of a charity is to help those who need assistance. They propose not unskillful or incompetent aid, but humane and efficient treatment. The subject of an employee's negligence is harmed instead of helped by the charity. The will

of the donors is thwarted instead of served when an object of their beneficence suffers from such neglect. When administered by incompetent servants, charity, instead of being a great boon to humanity, may become a menace. One who enters a hospital expects and has a right to expect, more skillful treatment than is obtainable in the home. If such institutions be not held to reasonable care in the selection of their employees, confidence in their efficacy will be shaken. Many who need, will fear to accept hospital treatment, and those who do apply therefor, will lack the faith therein that is so frequently half the battle in the contest with disease.

"In order that the high purpose of the donors of a charitable hospital may be best served, that those who need aid may not hesitate to accept the charity, and to prevent as far as may be human suffering from acts of negligence or incompetence, it would seem imperative to require of those in charge reasonable care in the selection and retention of the employees.

"The fact that one is a paying patient does not alter the rule. Such patient is the recipient of the donors' gratuity only in a lesser degree than one who makes no payment. The hospital building, with its equipment, management, and its great possibilities for the alleviation of suffering, was provided by charity. In using the organization made possible and supported by that charity, a paying patient, to that extent, benefits by the charity. * * *"

The doctrine of the *Roberts* case has been the law of this jurisdiction for more than a quarter of a century, and we believe it is in accord with the weight of authority in this country. "With regard to American jurisdictions, as a matter of general consideration (although subject to the exception already discussed that a few jurisdictions recognize liability in all situations), the rule is well settled that a person who receives an injury from the negligent acts of the servants of a charitable corporation at a time when he is accepting the benefits of the charity cannot recover for such injury, provided the corporation used due care in selecting its servants. The corollary to this

general proposition is also observed by American courts. The clear inference from the general rule as to immunity of charitable organizations from liability for injuries due to torts of their agents or employees is that there is liability if due care is not exercised in such selection, and this is in line with the weight of authority. * * *" 10 Am. Jur., Charities, §144. The *Roberts* case and many from other jurisdictions are cited in the footnote.

In the case under consideration, we have a factual situation not present in the *Roberts* case, to which the second question certified by the trial court is directed, and that is that the defendant carried liability insurance which protected the institution from any judgment that might be rendered against it as a result of injury to a patient by the negligence of employees of the institution. A number of courts have withdrawn immunity from charitable hospitals in cases where the institution carried liability insurance. In *Wendt* v. *Servite Fathers*, 332 Ill. App. 618, 76 N. E. 2d 342, the court said: "We hold that where insurance exists and provides a fund from which tort liability may be collected so as not to impair the trust fund, the defense of immunity is not available." To the same effect is *Morton* v. *Savannah Hosp.*, 148 Ga. 438, 96 S. E. 887; *O'Conner* v. *Boulder Colorado Sanitarium* Assn., 105 Col. 259, 97 P. 2d 835; and others.

We do not elect to follow the doctrine of the cases last cited, although we recognize that under the rule of the *Roberts* case it may be necessary for charitable hospitals to carry liability insurance to protect them against injuries that may result from the negligent employment or retention of its personnel. However, we believe that the established precedent in this State, which represents the weight of authority elsewhere, should be adhered to and that to make an exception, in the case of one institution which has such insurance and deny in others that do not, would constitute the beginning of a descent into a quagmire of judicial confusion into which many courts have been plunged on this subject, and from which they have, with difficulty, extricated themselves, if, indeed, they have

extricated themselves at all. The New York court, prior to 1937, subscribed to the theory of immunity, but in that year in *Sheehan* v. *North County Community Hospital,* 273 N. Y. 163, 7 N. E. 2d 28, repudiated the doctrine. Then, in 1940, in *Dillin* v. *Rockway Beach Hospital & Dispensary,* 284 N. Y. 176, 30 N. E. 2d 373, that court again adopted a policy of conditional immunity.

10 Am. Jur., Charities, § 152, citing many cases in the footnote, recites what we believe to be the majority view on this particular question: "The fact that a charitable institution carries indemnity insurance indemnifying it from liability to a recipient of its bounty does not create liability, in instances where such charitable organizations are immune from liability."

We are of the opinion that the ruling of the trial court upon each of the questions certified was correct, and, therefore, that ruling is affirmed.

*Ruling affirmed.*