ANNA E. KOEHLER

*v.*

OHIO VALLEY GENERAL HOSPITAL ASSOCIATION

(CC 795)

Submitted September 23, 1952. Decided December 22, 1952.

*Joseph A. Gompers* and *James P. Clowes,* for plaintiff.

*O'Brien & O'Brien,* for defendant.

HAYMOND, JUDGE:

In this action of trespass on the case, instituted in the Circuit Court of Ohio County, the plaintiff Anna E. Koehler seeks to recover from the defendant, Ohio Valley General Hospital Association, a nonstock association incorporated for the purpose of operating a hospital without profit, damages for personal injuries caused by the alleged negligence of the defendant in failing to construct and maintain in a reasonably safe condition a ramp in a corridor in its hospital building in Wheeling, Ohio County, West Virginia, upon which the plaintiff fell and sustained the injuries of which she complains.

To the declaration, which consists of a single count, the defendant filed its plea of the general issue and an amended special plea to which the plaintiff filed a demurrer. The circuit court overruled the demurrer to the amended special plea and certified its ruling to this Court.

The declaration, to which no demurrer was interposed, charges, in substance, that the defendant, at and prior to the time the plaintiff sustained the injuries of which she complains, was the owner and the operator of a building in the City of Wheeling, Ohio County, West Virginia, which it used as a hospital; that a corridor on the first floor of the interior of the building and extending to an upper floor contained a steep ramp which led to and connected with certain rooms on the first floor in that section of the building and was used by persons generally as means of ingress and egress to and from such rooms; that the defendant leased or rented certain rooms on the first floor adjacent to the corridor to a practicing physician and surgeon who used them for his private practice in the treatment of his patients; that the plaintiff had been and was a patient of the physician and surgeon and was and had been receiving professional treatment from him; that to go to his rooms for such treatment it was necessary for the plaintiff to use the corridor and the ramp; that the ramp, furnished, provided and maintained by the defendant for the use of the patients of the physician and

surgeon, was in a dangerous condition caused by the application of wax and other slippery substances to the floor of the ramp at the direction and with the full knowledge of the defendant and by the failure of the defendant to provide it with reasonably safe protective features such as lighting, mats, pads, banister, guards or rails for the guidance or the protection of the plaintiff in using the corridor and the ramp; that the plaintiff, after having visited the rooms occupied by the physician and surgeon, and having received treatment from him as his patient, pursuant to an appointment with him for that purpose, while walking upon the ramp, in the exercise of due care, slipped and fell upon the surface of the ramp and sustained serious and permanent personal injuries; that the defendant negligently installed and maintained the ramp in a dangerous condition; that the negligence of the defendant in failing to use due care to install and maintain the ramp in a reasonably safe condition proximately caused the injuries of which she complains; and that she has sustained damages in the amount of $25,000.00.

The amended special plea of the defendant alleges that it is incorporated as a nonstock association, under the Code of West Virginia, for the purpose of conducting a hospital without profit to its members or other persons; that by reason of its charitable work it has at all times operated its hospital at a loss and that its deficits are from time to time provided for by charitable donations of money and materials, by the income of charitable bequests, and by allowances made by the West Virginia Department of Public Assistance in behalf of the State of West Virginia and the County of Ohio; that the defendant maintains and conducts an out patient department in five rooms on the first floor in a section of its hospital building in which a separate entrance is maintained for patients of that department; and that in that department treatment is rendered to indigent patients for tuberculosis and other diseases. The amended special plea also alleges that in the treatment of those diseases, a physician and surgeon who occupied rooms in that department is extremely well

qualified; that he maintained no office for the examination and the treatment of tubercular patients; that in order to make his ability and skill available to the general public, he was permitted the use of the out patient department of the hospital on two days of each week for a period of several hours during each day; that the facilities used by him in treating his patients, including the plaintiff, were furnished by the defendant and could not have been provided for him in any other manner; that the entire facilities of the out patient department of the defendant, including equipment and services of nurses in connection with the treatment rendered by him to his patients, including the plaintiff, were made available to him; that he did not lease space in the hospital or in the out patient department, but that he paid the defendant for these services at the rate of $2.00 for each patient treated by him; that the entire revenue of the out patient department, including the revenues received by him, were approximately $1,000.00 per month less than the expense of operating that department; that the deficit from these services, including the services utilized by his patients, has been absorbed by charitable bequests and public funds; that in making available the services of the department to him and his patients, including the plaintiff, the defendant has rendered an essential public service at a loss. The amended special plea further alleges that the defendant has no property or funds with which any judgment in this action could be paid other than funds which are administered as a charitable trust in the care of sick and injured persons and in the training of nurses and physicians; and that the defendant at all times has used reasonable care in the selection and the retention of its manager, agents, and employees who are charged with the installation and the maintenance of the floor of the ramp and the corridor in the building of the defendant.

The five separate matters set forth in the certificate of the circuit court, as summarized, present these two controlling questions: (1) Whether the plaintiff, under the allegations of the declaration and the amended special

plea, is a stranger to, or a beneficiary of, the charitable hospital maintained and operated by the defendant; and (2) whether the defendant, a charitable institution, in operating and maintaining its hospital, is liable to the plaintiff, under the allegations of the declaration and the amended special plea, for the personal injuries, sustained by the plaintiff, caused by its negligence in constructing or maintaining the ramp and the corridor in its building.

The question whether, and to what extent, a charitable institution is liable in tort for its negligence or that of its servants and agents has frequently been considered by the courts in many jurisdictions. It is beset with difficulty and has resulted in conflicting decisions based on various reasons. "It has been truly said that 'the cases on this subject present an almost hopelessly tangled mass of reason and unreason such as is not often encountered in the law,' and that the marked differences in the cases, both as to results and the process by which they are reached, appear in the confusion of the quasi trust, arising from the restriction which binds every corporation to apply its corporate funds to the purposes for which it was organized, with the relation of a strictly legal trustee to his trust funds; and especially in the various means by which courts have sought to escape the patent injustice of applying the extreme doctrine of respondeat superior to the personal defaults of employees of charitable institutions." 10 Fletcher Cyclopedia of the Law of Private Corporations, Revised and Permanent Edition, Chapter 54, Section 4921. In *Vermillion* v. *Women's College of Due West*, 104 S. C. 197, 88 S. E. 649, in discussing this subject the court said: "The conclusions reached are variant and irreconcilable. Some courts hold the rule of respondeat superior applicable to the fullest extent; others deny its applicability in toto; while others take intermediate ground for various reasons. The rule of total exemption is, perhaps, without exception, based upon grounds of public policy."

Courts in some jurisdictions hold that a charitable institution is completely immune from all liability for its

torts to every class of plaintiff, whether the plaintiff be an employee or a patient of a charitable hospital, or a stranger or an invited person who is neither its employee nor its beneficiary. *Paterlini* v. *Memorial Hospital Association of Monongahela City, Pennsylvania,* 3 Cir., 247 Fed. 639; *Brown* v. *St. Luke's Hospital Association,* 85 Colo. 167, 274 P. 740; *Hogan* v. *Chicago Lying-In Hospital and Dispensary,* 335 Ill. 42, 166 N. E. 461; *Pikeville Methodist Hospital* v. *Donahoo,* 221 Ky. 538, 299 S. W. 159; *Emery* v. *Jewish Hospital Association,* 193 Ky. 400, 236 S. W. 577, *Loeffler* v. *Trustees of Sheppard and Enoch Pratt Hospital,* 130 Md. 265, 100 A. 301, L. R. A. 1917D, 967; *Kidd* v. *Massachusetts Homeopathic Hospital,* 237 Mass. 500, 130 N. E. 55; *Roosen* v. *Peter Bent Brigham Hospital,* 235 Mass. 66, 126 N. E. 392; 14 A. L. R. 563; *Gable* v. *Sisters of St. Francis,* 227 Pa. 254, 75 A. 1087, 136 Am. St. Rep. 879.

Although there are decisions to the contrary, according to the decided weight of authority, a charitable hospital is not liable to its patients and beneficiaries for the negligence of its employees, including physicians, nurses and other attendants, if it appears that it has exercised reasonable care in the selection and the retention of its employees. *Deming Ladies' Hospital Ass'n.* v. *Price,* 10 Cir., 276 Fed. 668; *Hearns* v. *Waterbury Hospital,* 66 Conn. 98, 33 A. 595, 31 L. R. A. 224; *Morton* v. *Savannah Hospital,* 148 Ga. 438, 96 S. E. 887; *St. Vincent's Hospital* v. *Stine,* 195 Ind. 350, 144 N. E. 537, 33 A. L. R. 1361; *Mikota* v. *Sisters of Mercy,* 183 Iowa 1378, 168 N. W. 219; *Mississippi Baptist Hospital* v. *Moore,* 156 Miss. 676, 126 So. 465, 67 A. L. R. 1116; *Rudy* v. *Lakeside Hospital,* 115 Ohio St. 539, 155 N. E. 126; *Gitzhoffen* v. *Sisters of Holy Cross Hospital Ass'n.* 32 Utah 46, 88 P. 691, 8 L. R. A., N. S., 1161; *Weston's Adm'x* v. *Hospital of St. Vincent of Paul,* 131 Va. 587, 107 S. E. 785, 23 A. L. R. 907; *Bishop Randall Hospital* v. *Hartley,* 24 Wyo. 408, 160 P. 385, Ann. Cas. 1918E, 1172. This Court, in *Roberts* v. *Ohio Valley General Hospital,* 98 W. Va. 476, 127 S. E. 318, 42 A. L. R. 968, recognized the principle, supported by the decisions just cited from other jurisdictions, known as the "qualified immunity rule", or

"the due care in selection rule", in holding that: "It is incumbent on a charitable hospital to use reasonable care in the selection and retention of its physicians, nurses, and attendants; and for failure to do so, it is liable for injuries received by its patients due to their incompetency." The rule of the *Roberts* case represents the law in this jurisdiction with respect to a patient of a charitable hospital; and it is immaterial whether the patient pays for the services received or obtains them free of charge.

The decisions of the courts which hold that a charitable institution is not liable to a patient or a beneficiary for the torts of its servants, agents, and employees without qualification, or that such hospital is not liable to a patient or a beneficiary if the hospital exercises due care in the selection and the retention of its servants, agents, and employees, are based on several theories. Among them are the trust fund theory, which rests on the assumption that a trust fund can not be made liable for breaches of trust by the trustee and that, if the charity or trust fund could be used to compensate injured parties for the negligence of the agents or the servants of a charitable institution, the fund would be diverted to uses never intended by the donor and the charitable purposes of the creator or the founder would be frustrated; the theory of implied waiver or assent to immunity which is based on the supposition that the person who seeks and receives the services of a charitable institution assumes the risk which attends such services; the theory of the inapplicability of the doctrine of respondeat superior to a charitable institution which is grounded on the premise that such institutions are not subject to that doctrine because they derive no benefit from the acts of their servants and employees; and the general theory of public policy, which appears to include each of the first mentioned three theories and which rests on the postulate that inasmuch as such institutions are inspired and supported by benevolence and devote their assets and energies to the relief of the destitute, the sick, and the needy, it is essential to the common welfare that they should be encouraged in

every way and held to be exempt from liability from tort and that to regard such institutions otherwise would operate to discourage the charitably inclined, dissipate the assets of such institutions in damage suits, and ultimately result in their destruction. See 10 Am. Jur., Charities, Sections 146, 145, 150, and 147. Each of the first mentioned three theories has been criticized and, in some instances, rejected by courts which, under one or another of the four theories, adhere to the rule of complete immunity from liability to a beneficiary, or the rule of qualified immunity which exempts charitable institutions from liability to a beneficiary for injuries caused by the negligence of their servants and employees if reasonable care has been exercised in their selection and retention, and it would serve no useful purpose here to undertake to justify the soundness or to demonstrate the unsoundness of any of the above mentioned theories.

Inasmuch as this Court is committed to the doctrine of the *Roberts* case, it is important in the decision of the case at bar to determine whether, under the allegations of the declaration and the amended special plea, the plaintiff was a patient or a beneficiary of the defendant, or a patient of the physician and surgeon, and as such a stranger occupying the status of an invitee of the defendant, at the time she was injured, for if the plaintiff, when injured, was a patient of the defendant, the allegation in the amended special plea that the defendant exercised reasonable care in the selection and the retention of its servants and employees states a valid defense to the claim of the plaintiff. If, however, the plaintiff at the time of her injury, was not a beneficiary of the defendant, but instead was a stranger occupying the legal status of its invitee, this case is distinguishable from and is not controlled by the decision of this Court in the *Roberts* case, or its decision in *Fisher* v. *Ohio Valley General Hospital Association,* 137 W. Va. 723, 73 S. E. 2d 667, which adheres to and approves the doctrine of the *Roberts* case, or its decision in the recent case of *Shaffer* v. *Monongalia General Hospital,* 135 W. Va. 163, 62 S. E. 2d 795, which in-

volved the claim for damages for personal injuries of a patient against a public hospital, the title to the property of which was vested in the County Court of Monongalia County, and which hospital, operated under the supervision of a board of trustees appointed by the county court, was engaged in the performance of a governmental function.

Though as already pointed out this Court is committed to the doctrine of the *Roberts* case as to a patient of a charitable hospital, the question of the liability of a charitable hospital to a stranger has not been considered or passed upon in any decision of this Court; and that question is one of first impression in this jurisdiction.

It is clear from the allegations of the declaration and the amended special plea that the relation between the physician and surgeon, who treated the plaintiff, and the defendant was not that of master and servant but that of landlord and tenant. He charged and received a fee of $2.00 from each patient treated by him, regardless of his own charge or lack of charge for treating the patient, and the amount which he collected and paid to the hospital for the rooms occupied by him and the equipment and the services furnished by the hospital and used by him in treating the plaintiff was in effect a payment of rent for such occupancy and use.

It is also clear that the plaintiff was the patient of the doctor who treated her and not the patient of the defendant. The plaintiff was, of course, benefited by the facilities which the defendant furnished the doctor and which he used in treating her, but the benefit which she received was, with respect to the defendant, remote and secondary rather than direct and primary. The defendant furnished the facilities, not to the plaintiff, but to the doctor, and whatever benefit the plaintiff received resulted directly from the use by the doctor of the facilities which the defendant made available to him. Without the use and the application by the doctor of those facilities and services they would have been entirely useless and of no value whatsoever to the plaintiff.

The distinction between a beneficiary of and a stranger to a charitable hospital or institution has been criticized on the grounds that to accord the right of recovery to a stranger but not to a beneficiary requires a beneficiary to accept succor at the risk of greater harm; that when harm occurs a beneficiary bears a burden which should fall on all alike and not on him alone; and that to allow recovery to a beneficiary but to deny it to a stranger inflicts upon a stranger the cost of care and cure and the cost of injury to a beneficiary. Notwithstanding the force of such criticism, the courts in several jurisdictions recognize the distinction and hold that a charitable hospital or institution is not exempt from liability for the tort of its servants and employees which results in injury to a stranger or an invitee. *Cohen* v. *General Hospital Society of Connecticut,* 113 Conn. 188, 154 A. 435; *Lusk* v. *United States Fidelity and Guaranty Co.,* La. App., 1941, 199 So. 666; *Bougon* v. *Volunteers of America,* La. App., 1934, 151 So. 797; *Marble* v. *Nicholas Senn Hospital Association,* 102 Neb. 343, 167 N. W. 208; *Wright* v. *Salvation Army,* 125 Neb. 216, 249 N. W. 549; *Hewett* v. *Woman's Hospital Aid Association,* 73 N. H. 556, 64 A. 190, 7 L. R. A., N. S., 496; *Daniels* v. *Rahway Hospital,* 10 N. J. Misc. 585, 160 A. 644; *Basabo* v. *Salvation Army,* 35 R. I. 22, 85 A. 120, 42 L. R. A., N. S., 1144; *Walker* v. *Memorial Hospital,* 187 Va. 5, 45 S. E. 2d 898; *Hospital of St. Vincent of Paul* v. *Thompson,* 116 Va. 101, 81 S. E. 13, 51 L. R. A., N. S., 1025; *Heckman* v. *Sisters of Charity of House of Providence,* 5 Wash. 2d 699, 106 P. 2d 593. See 10 Am. Jur., Charities, Section 153; 13 R. C. L., Hospitals, Section 12.

Even though a charitable hospital or institution has been held to be completely, or to a limited extent, immune from liability to a beneficiary for injury caused by the tort of its servants and employees, and even though such immunity may be justified by the long duration of its recognition, the widespread judicial sanction resulting from an abundance of decisions, and its embodiment in the public policy in the jurisdictions in which it is recognized, the principle supported by the decisions in the numerous cases just cited that a charitable hospital or

institution is not immune from liability to a stranger or an invitee for injury caused by the tort of its servants and employees, even if it exercised due care in their selection and retention, is logically sound, is based on justice, and is in accord with the underlying principles of law which relate to and govern liability for negligent or tortious conduct. The general rule is that liability results from such conduct and any immunity from such liability is the exception to the rule. *President and Directors of Georgetown College* v. *Hughes,* 76 U. S. App. D. C. 123, 130 F. 2d 810. In the opinion in that case by Associate Justice Rutledge who later became an Associate Justice of the Supreme Court of the United States, adversely criticising both the doctrine of immunity of a charitable institution from liability for the torts of its servants and employees and the distinction between a beneficiary of and a stranger to such institution, though recognizing the existence of each in several jurisdictions, the court used this pertinent language:

"We start with general principles. For negligent or tortious conduct liability is the rule. Immunity is the exception. Human beings ordinarily are responsible for their own legally careless action. They respond also for negligent harms inflicted by their agents and employees. So do business corporations. Likewise trustees and other fiduciaries generally are liable for their own negligence in administration and operation of the business or property committed to their control. Respondeat superior more and more has made them, as it has private corporations, responsible for wrongs done by their inferior functionaries.

"Generally also charity is no defense to tort. For wrong done, it is no answer ordinarily to say, 'He did not pay and was not bound to pay for the service. I gave it to him.' One who undertakes to aid another must do so with due care. Whether the Good Samaritan rides an ass, a Cadillac, or picks up hitchhikers in a Model T, he must ride with forethought and caution. He is not relieved because it is his driver rather than himself who lapses

into carelessness. Nor does it matter that the doer of good is a corporation, if the act of gratuitous service is fairly incidental to the business. * * *. Charity and gratuity generally go to motive, not to duty. * * *. Charity suffereth long and is kind, but in the common law it cannot be careless. When it is, it ceases to be kindness and becomes actionable wrongdoing."

In the recent case of *Walker* v. *Memorial Hospital,* 187 Va. 5, 45 S. E. 2d 898, an action for damages for personal injuries by a woman who while visiting her husband, a patient in a charitable hospital, was injured by falling on a platform and a step of the hospital due to their alleged unsafe condition, the Supreme Court of Appeals of Virginia, whose decisions recognize the distinction between a beneficiary of and a stranger to a charitable hospital, held that a hospital, though a charitable corporation, owed the plaintiff the duty to exercise ordinary care to maintain its premises in a reasonably safe condition and that she occupied the legal status of an invitee of the hospital. The plaintiff in the *Walker* case was denied a recovery because of her failure to prove negligence of the defendant, but the facts in that case, insofar as they indicate that the plaintiff fell and was injured while on the premises of the hospital and at the time was a stranger occupying the legal status of its invitee, closely resemble the facts alleged in this case. In the earlier case of *Hospital of St Vincent of Paul* v. *Thompson,* 116 Va. 101, 81 S. E. 13, 51 L. R. A., N. S., 1025, the same court held that a person, who accompanied a sick friend to a hospital operated by a charitable institution and was injured by falling into an elevator shaft negligently left unprotected by the defendant, could recover as such person was not a beneficiary of the charity but a stranger; and that a charitable institution was not exempt from liability for a tort against a stranger on the ground that it holds its property in trust to be applied to the purposes of the charity.

Though committed to the doctrine of the *Roberts* case, which affords immunity to a charitable institution against the claim of a negligently injured patient if such institu-

tion exercises due care in the selection and the retention of its servants and employees, this Court is unwilling to extend immunity to a charitable institution against the claim of a stranger who sustains injury caused by the negligence of its servants and employees even though it exercises due care in their selection and retention. This Court entertains the view, and accordingly holds, that a charitable institution which owns a building in which it operates a charitable hospital owes to a stranger to such hospital, who occupies the legal status of an invited person as distinguished from a patient or a beneficiary of such hospital, the duty to exercise ordinary care to keep and maintain its building, including a ramp and a corridor used generally by persons for ingress to and egress from rooms in such building, in a reasonably safe condition; and that for its negligence in failing so to do it is liable to an invited person whose injuries are caused by its negligence.

Under the allegations of the declaration and the amended special plea, the plaintiff, at the time of her injury, was an invitee of the defendant and it owed her the duty to exercise ordinary care to maintain its hospital building, including the ramp and the corridor in such building, in a reasonably safe condition. A person, not a patient or a beneficiary of a hospital operated by a charitable institution, who visits such hospital for treatment by a practicing physician who rents rooms and uses equipment, owned and made available to him by such institution, in the building in which such hospital is operated, is, as to such institution, an invited person, and it owes such person the duty to exercise ordinary care to keep and maintain its premises in a reasonably safe condition. *Walker* v. *Memorial Hospital*, 187 Va. 5, 45 S. E. 2d 898; *Hospital of St. Vincent of Paul* v. *Thompson*, 116 Va. 101, 81 S. E. 13, 51 L. R. A., N. S., 1025. As to the duty generally owed by the owner or the proprietor of premises to an invited person see *Cooper* v. *Pritchard Motor Company*, 128 W. Va. 312, 36 S. E. 2d 405; *Early* v. *Lowe*, 119 W. Va. 690, 195 S. E. 852; *Starcher* v. *South Penn Oil Company*, 81 W. Va. 587, 95 S. E. 28; *Smith* v. *Sunday Creek Company*, 74 W. Va.

606, 82 S. E. 608; *Smith* v. *Parkersburg Co-Operative Association*, 48 W. Va. 232, 37 S. E. 645.

The first question presented by the certificate of the circuit court is answered by the statement that the plaintiff, under the allegations of the declaration and the amended special plea, is a stranger to and not a beneficiary of the charitable hospital maintained and operated by the defendant; and the second question so presented is answered by the statement that the defendant, a charitable institution, in operating and maintaining its hospital, is liable to the plaintiff, a stranger to such institution, under the allegations of the declaration and the amended special plea, for personal injuries sustained by her, caused by its negligence in constructing or maintaining the ramp and the corridor in its building, if the material allegations of the declaration are supported by sufficient proof.

As the amended special plea does not set forth a valid defense to the cause of action stated in the declaration, the circuit court should have sustained the demurrer to such plea; and the ruling of that court in overruling the demurrer to the amended special plea is reversed.

*Ruling reversed.*